**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **MSP RECOVERY CLAIMS, SERIES LLC, MSPA CLAIMS 1, LLC, and MAO-MSO RECOVERY II, LLC, SERIES PMPI, a segregated series of MAO-MSO II LLC,** | Case No.: |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **NORTHLAND INSURANCE COMPANY, TRAVELERS CASUALTY COMPANY, FARMINGTON CASUALTY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, STANDARD FIRE INSURANCE COMPANY, SELECT INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, CHARTER OAK FIRE INSURANCE COMPANY, PHOENIX INSURANCE COMPANY, TRAVELERS INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, TRAVELERS HOME AND MARINE INSURANCE COMPANY, and FIRST FLORIDIAN AUTO AND HOME INSURANCE COMPANY,** | |
| **Defendants.** | |

---

**PLAINTIFFS' FIRST CLASS ACTION COMPLAINT FOR DAMAGES**

---

Plaintiffs, MSP Recovery Claims Series, LLC ("MSPRC"), MSPA Claims 1, LLC ("MSPAC"), and MAO-MSO Recovery II LLC, Series PMPI, a segregated series of MAO-MSO Recovery II LLC, ("MAO-MSO") (collectively "Plaintiffs"), on behalf of themselves and all

i

others similarly situated (the "Class Members"), bring this action Northland Insurance Company, Travelers Casualty Company, Farmington Casualty Company, Travelers Casualty and Surety Company, Standard Fire Insurance Company, Select Insurance Company, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, Charter Oak Fire Insurance Company, Phoenix Insurance Company, Travelers Indemnity Company, Travelers Casualty and Surety Company of America, Travelers Property Casualty Insurance Company, Travelers Home And Marine Insurance Company, and First Floridian Auto and Home Insurance Company (collectively "Defendants"), and allege:

**<u>INTRODUCTION</u>**

1.      Defendants have systematically and uniformly failed to honor their primary payer obligations under the Medicare Secondary Payer provisions of the Social Security Act (the "MSP Law"), 42 U.S.C. § 1395y et seq., by failing to reimburse medical expenses resulting from injuries sustained in automobile and other accidents (the "accident-related medical expenses"). As a result of Defendants' misconduct, those accident-related medical expenses  were paid by Medicare Advantage Organizations, as well as first tier and downstream actors who ultimately paid for Medicare beneficiaries' accident-related medical expenses pursuant to risk-sharing agreements authorized under 42 U.S.C. § 1395w-22(b)(4) (these Medicare Advantage payors are hereinafter referred to collectively as "MA Plans"). Defendants have failed to reimburse Plaintiffs and the Class Members for accident-related medical expenses upon entering into settlements with Medicare beneficiaries. As a result, the cost of those accident-related medical expenses has been borne by Medicare and MA Plans to the detriment of the Medicare Trust Funds and the public. Plaintiff and the class are entitled to be paid or reimbursed at industry standard rates by the defendant primary payers.

2.     Defendants are auto and/or other liability insurers that provide either no-fault or liability insurance to their customers, including Medicare beneficiaries enrolled under Part C of the Medicare Act (the "Enrollees"). In the case of automobile and other accidents specifically involving Enrollees of MA Plans, Defendants are considered primary plans under the MSP Law. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan … a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no-fault insurance); 42 C.F.R. § 411.21 (same). Accordingly, Defendants' obligation to pay for accident-related medical expenses on behalf of Enrollees is primary relative to Medicare's obligation to pay for those same accident-related medical expenses, which is secondary. Defendants have systematically failed to make these reimbursements, passing on those expenses to Medicare and MA Plans.

3.     Plaintiffs' assignors are entities that have borne the costs of Medicare benefits under the Medicare Advantage Program, otherwise known as Part C of the Medicare Act. Medicare Advantage Plans provide such services pursuant to contracts with the Centers for Medicare & Medicaid Services ("CMS") in which CMS pays the Medicare Advantage Plans a fixed fee per enrollee and the MA Plans provide, at a minimum, the same benefits that Enrollees would receive under traditional Medicare. MA Plans bear the cost of those conditional payments. MA Plans stand on the same footing as traditional Medicare, including under the MSP Law, which declares that Medicare is a "secondary payer" to all other sources of coverage and, consequently, are empowered to recoup from rightful primary payers when they have paid for services that fell within overlapping insurance maintained by Enrollees with a primary payer.

4.     The overriding purpose of the MSP Law is to protect the Medicare Trust Funds by ensuring that Medicare and MA Plans do not pay for medical expenses that should be paid instead

iii

by primary payers such as Defendants.[1] Without the provisions in the MSP Law establishing a private right of action against primary payers, there would exist no mechanism to ensure that primary payers hold up their end of the bargain and pay the medical expenses associated with accident-related injuries and/or treatments. Indeed, Medicare and MA Plans, which are required to conditionally pay accident-related medical expenses promptly with the expectation of reimbursement from a primary payer, would otherwise be left to bear the burden and overwhelming expense of such injuries and treatments.  The capitation payments made by CMS (from the Medicare Trust Fund) to MA plans and which fund their risk contracts with down-stream providers all come from the Medicare Trust Fund.

5.      In addition to their obligation to pay for, and/or reimburse Medicare and MA Plans accident-related medical expenses on behalf of their enrollees, primary payers like Defendants have an affirmative burden, under applicable federal regulations promulgated under the MSP Law, to: (i) identify whether their insureds or claimants are Medicare beneficiaries; and (ii) report their primary payer responsibility to CMS.

6.      Even in the face of the MSP Law's clear legal requirement that primary payers (like Defendants) pay for accident-related medical expenses, take steps to identify whether their enrollees are Medicare beneficiaries, and report their primary payer responsibility to CMS,[2] primary payers rarely honor their obligations and, instead, take steps to ensure that the burden for those accident-related medical expenses is borne by Medicare and MA Plans.  Despite at times reporting as required by law primary payers still very often fail to pay or reimburse at the required

---

[1] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

[2] *Id.*

industry standard rates.

7.     To remedy this problem, Congress provided a private right of action to any private entity or individual to enforce the MSP Law and remedy a primary payer's failure to reimburse conditional payments made or borne by Medicare or MA Plans, and provided for the recovery of double damages for instances in which primary payers have failed to honor their reimbursement obligations under the MSP Law.

8.     Plaintiffs utilize a proprietary system that matches the health care claims data from their assignors to available reporting data from CMS, Insurance Services Office ("ISO"), police crash and incident reports (where such data has been made available by the jurisdiction wherein the crash occurred), and claims data made available by primary payers like Defendants, either voluntarily through a coordination of benefits process or by judicial compulsion in a data matching process that has proven successful in identifying primary payers' wrongdoing. Plaintiffs' system automates the process of identifying instances in which primary payers like Defendants fail to honor their obligations under the MSP Law.

9.     As described in detail below, Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MA Plans recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

10.    This action seeks redress for Defendants' flagrant and systematic failure to comply with the MSP Law.

## THE PARTIES[3]

11.     MSP Recovery Claims, Series LLC is a Delaware series limited liability company with a principal place of business located at 2701 S. LeJeune Road, 10th Floor, Coral Gables, Florida 33134. MSPRC's limited liability company agreement provides for the establishment of one or more designated Series. All records of all Series are maintained together with all assets of MSPRC. All designated Series have their principal place of business at 2701 S. LeJeune Road, 10th Floor in Coral Gables, Florida.

12.     MSPRC has established various designated series pursuant to Delaware law in order to maintain various claims recovery assignments separate from other company assets, and to account for and associate certain assets with certain particular series. All designated series form a part of MSPRC and pursuant to MSPRC's limited liability agreement and applicable amendment(s), each designated series is owned and controlled by MSPRC. MSPRC may receive assignments in the name of MSPRC, and further associate such assignments with a particular series, or may have claims assigned directly to a particular series. In either event, MSPRC maintains the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series. Any claim or suit may be brought by MSPRC

---

[3] Defendants' corporate organizational structure is attached hereto as Exhibit B. Pursuant to Section 111, a Responsible Reporting Entity ("RRE") may not register as an RRE for a sibling in its corporate structure. An entity may register as an RRE for itself or for any direct subsidiary in its corporate structure. A parent entity may register as an RRE for any subsidiary in its corporate structure. Plaintiffs have made a good faith effort to accurately identify the Defendants and have relied on information obtained from Defendants' website, annual filings, police crash and incident reports, and reporting data from ISO and a vendor called MyAbility. MyAbility is one of sixteen (16) CMS-authorized vendors that allow companies, such as Plaintiffs, to access data that primary payers report to CMS, in compliance with their statutory reporting obligations. The reporting data attached to this Complaint is taken directly from the data that CMS stores, which is inputted by Defendants, not Plaintiffs. Accordingly, any inaccuracies or lack of specificity in the reporting data is attributable to the manner in which Defendants chose to report.

in its own name or it may elect to bring suit in the name of its designated series.

13.     MSPRC's limited liability agreement provides that any rights and benefits arising from assignments to its series shall belong to MSPRC.

14.     MSPA Claims 1, LLC is a Florida limited liability company, with its principal place of business at 2701 S. LeJeune Road, Tenth Floor in Coral Gables, Florida.

15.     MAO-MSO Recovery II LLC, Series PMPI, a segregated series of MAO-MSO Recovery II LLC, a Delaware limited liability company with its principal place of business at 45 Legion Drive in Cresskill, New Jersey.

16.     Defendant Northland Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

17.     Defendant Travelers Casualty Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

18.     Defendant Farmington Casualty Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

19.     Defendant Travelers Casualty and Surety Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

20.     Defendant Standard Fire Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

21.     Defendant Select Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

22.     Defendant St. Paul Fire and Marine Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford,

CT 06183.

23.     Defendant St. Paul Mercury Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

24.     Defendant Charter Oak Fire Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

25.     Defendant Phoenix Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

26.     Defendant Travelers Indemnity Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

27.     Defendant Travelers Casualty and Surety Company of America is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

28.     Defendant Travelers Property Casualty Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

29.     Defendant Travelers Home and Marine Insurance Company is a company that issues property and casualty policies, with its principal place of business at One Tower Square Hartford, CT 06183.

30.     Defendant First Floridian Auto and Home Insurance Company is a company that issues property and casualty policies, with its principal place of business at 1 N. Dale Mabry Highway, STE 500 Tampa, FL 33609.

## **ASSIGNMENTS**

31.     Plaintiffs have been assigned all legal rights of recovery and reimbursement for

medical items and services provided by Assignors that administer Medicare benefits for Medicare beneficiaries under Medicare Part C; whether said rights arise from: (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of payments made by the assignor health plans, including the right to recover claims for health care services on a fee-for-service basis.

32.    The Assignors have assigned all rights, title, and interest to the recoverable claims, conferring standing to Plaintiffs to bring this lawsuit. These are valid and binding contracts. All claims identified on Exhibit A hereto fall within the scope of the assignment agreements executed by Plaintiffs' Assignors.

33.    Assignors paid for the medical items and services related to the treatment of injuries arising from an accident and/or incident for which Defendants were responsible as the primary payer, but for which Defendants failed to pay or reimburse Plaintiffs' assignors.

**a. Plaintiff MSPRC's Standing**

34.    Certain series of MSPRC have been irrevocably assigned any and all rights to recover payments made on behalf of their Assignors' health plan members and enrollees. These assignments authorize the series and, in turn, MSPRC through its operating agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

35.    The assignments to Plaintiff MSPRC, which are alleged in Appendix 2 to this Complaint, are valid and binding.

**b. Plaintiff MSPA's Standing**

36.    MSPA has been irrevocably assigned any and all rights to recover payments made

ix

on behalf of Assignors' health plan members and enrollees. These assignments authorize MSPA to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

37.     The assignments to Plaintiff MSPA, which are alleged in detail in Appendix 2 to this Complaint, are valid and binding contracts.

**c. MAO-MSO's Standing**

38.     MAO-MSO has been irrevocably assigned any and all rights to recover payments made on behalf of its Assignors' health plan members and enrollees. These assignments authorize MAO-MSO to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

39.     The assignments to Plaintiffs, which are alleged in detail in Appendix 2 to this Complaint, are valid and binding contracts.

**d. Additional Standing Allegations**

40.     Further, and separately, certain of the assignment agreements held by the individual Plaintiffs from Medicare Advantage Organizations and risk-sharing downstream entities contain exclusionary language, often referred to as "carve-out" provisions. Under those provisions, a limited number of claims were retained by the applicable assignor.

41.     In all instances where an assignment contains a carve-out provision, the assignor has furnished Plaintiffs with one or more itemized lists identifying the specific claims retained by that assignor. Those lists are referred to as "carve-out lists." Plaintiffs have cross-referenced the individual claims identified on Exhibit A against those carve-out lists and have confirmed that the Exhibit A claims do not appear on the carve-out lists and have been assigned and conveyed to one of the Plaintiffs in this case.

42.     Put differently, the claims identified on Exhibit A and at issue in this lawsuit have not been assigned or conveyed to any other recovery vendor (outside of the chain of assignments detailed herein) and were not being pursued by any other recovery vendor (by subrogation action or otherwise) as of the time of the assignment agreements at issue.[4] The claims identified on Exhibit A have been assigned to Plaintiffs pursuant to the assignment agreements detailed herein.

## JURISDICTION AND VENUE

43.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

44.     This court has personal jurisdiction over Defendant as Defendant: (a) has contracted to insure a person, property, or risk located within this state at the time of contracting; and (b) operates, conducts, and carries on a business venture in the state of Florida. A substantial number of the claims thus far identified by Plaintiffs arise from Defendants' conduct within this state. Indeed, Defendants have failed to reimburse Plaintiffs' Assignors in the State of Florida and have failed to reimburse Plaintiffs' Assignors for treatments rendered by Florida-based providers to Medicare beneficiaries located and/or residing in the State of Florida. In addition, upon information and belief, one or more of the instances in which Defendants were responsible for Plaintiffs' assigned Enrollees accident-related medical expenses but neither paid nor reported their primary payer responsibility arise out of Defendants' conduct within this State.

45.     Further, Defendants maintain sufficient minimum contacts with the State of Florida so as to not offend traditional notions of fair play and substantial justice. Defendants maintain and

---

[4] Similarly, the Exhibit A claims were not the subject of an action by the Medicare beneficiary against the Defendants as of the time of the relevant assignment agreements.

carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits of this judicial district. Defendants have purposefully availed themselves of the privilege of conducting activities within the State of Florida, thus invoking the benefits and protections of its laws. Defendants' acts and omissions were such that it should have reasonably anticipated being haled into court in this forum.

46.     At all times herein mentioned, Defendants were authorized to or otherwise engaged in business within the state of Florida and did in fact offer insurance policies that contain no-fault and/or medical payments coverage for any accident-related medical expense within the state of Florida and elsewhere.

47.     Exercising personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

48.     A substantial part of the events and omissions giving rise to Plaintiffs' causes of action occurred in this federal judicial district.

49.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Southern District of Florida because it is the district in which the cause of action accrued.

## **GENERAL ALLEGATIONS**

50.     This is a class action lawsuit under the MSP Law, arising from Defendants' systematic and uniform failure to reimburse conditional payments made by Plaintiffs' assignors and the Class Members on behalf of Enrollees for accident-related medical expenses.

51.     Defendants' liability to reimburse such conditional payments ordinarily arises in one of two contexts: (i) where Defendants are obligated to pay for the Enrollees' accident-related medical expenses in the first instance under a "no-fault" coverage liability policy, which include but are not limited to PIP or medical payment policies (collectively "no-fault policy"); or (ii) where

Defendants have entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies[5] issued by Defendants.

52.     On behalf of themselves and the Class Members, Plaintiffs seek, *inter alia*, double damages under the MSP Law's private cause of action for Defendants' failure to properly reimburse Plaintiffs' assignors' and the Class Members' conditional payments for Enrollees' accident-related medical expenses.

53.     Defendants have failed to fulfill their statutory duties upon entering into settlements with Enrollees. Specifically, Defendants have entered into settlement agreements with Enrollees as a result of claims arising under liability insurance policies issued by Defendants. Accordingly, Defendants are primary payers under the MSP Law and either should have directly paid the Enrollees' accident-related medical expenses or reimbursed Plaintiffs' assignors and the putative Class Members for the conditional payments they made.

54.     Rather than honor their obligations under the MSP Law, Defendants systematically and deliberately take steps to avoid paying or reimbursing the accident-related medical expenses paid by Plaintiffs' assignors and the Class Members on behalf of Enrollees. These steps include failing to report their primary payer responsibility to CMS and failing to coordinate benefits[6] with MA Plans.

55.     Upon information and belief, Defendants have failed to report their primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiffs' assignors for accident-related medical expenses on behalf of their Enrollees, for

---

[5] Liability insurance plans are considered primary plans under 42 U.S.C. § 1395y(b)(2).
[6] *See* Centers for Medicare and Medicaid Services, Coordination of Benefits and Recovery, Medicare Secondary Payer Overview (Jan. 13, 2014).

which Defendants have a demonstrated responsibility to pay under the MSP Law. Upon information and belief, this underreporting and misreporting to CMS regarding payments and beneficiaries is widespread and a product of Defendants' systemic failures to investigate and obtain information required to determine a claimant's Medicare eligibility, Medicare Advantage enrollment, and conditional payments made on that claimant's behalf.

56.     Plaintiffs' assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations. This lawsuit seeks to remedy that wrong and advance the interests of the MSP Law and Medicare, because when MA Plans recover conditional payments they "spend less on providing coverage for their enrollees" and the "Medicare Trust Fund . . . achieve[s] cost savings." *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 685 F.3d 353, 365 (3d Cir. 2012).

57.     Using the proprietary system designed and developed by Plaintiffs' related entity, MSP Recovery, LLC (the "MSP System"), Plaintiffs can capture, compile, synthesize, and funnel large amounts of data, which data is kept in the standard format for storing digital health insurance claims data, or electronic data interchange ("EDI"), called 837P ("837"),[7] to identify claims where Defendants have failed to honor their primary payer responsibilities on a class-wide basis.

58.     The MSP System utilizes ICD-9-CM or ICD-10-CM medical diagnosis codes and DRGs, ICD-9, ICD-10 PCS, HCPCS, or CPT procedure codes to gather information regarding an Enrollee's claim, such as the type of injury suffered, the circumstances that caused the injury, whether the listed primary insurance provider made payment, and whether the insurance carrier

---

[7] A detailed explanation of CMS' standard for storing digital health insurance claims data is set forth in Appendix II to this Complaint. *See also* Centers for Medicare and Medicaid Services, Medicare Learning Network, Medicare Billing: Form CMS-1500 and the 837 Professional (July 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837P-CMS-1500.pdf.

was a liability provider.

59.     The MSP System captures data from different sources, including CMS and publicly-available police crash and incident reports, to identify unreimbursed conditional payments made by Plaintiffs' assignors for their Enrollees' accident-related medical expenses for which Defendants are responsible as the primary payer. This claims identification process can also be applied class-wide to the data obtained from Class Members. The claims identified by the MSP System are but a fraction of the likely claims at issue in this case because Plaintiffs' system will not capture the claims that Defendants failed to report to CMS. The number and amount of these claims cannot be fully identified without discovery and matching of the Parties' data.

60.     The MSP System can also identify the amounts owed, through a data matching process using Plaintiffs' assignors' EDI, Class Members' EDI and Defendants' EDI, to discover and identify unreimbursed conditional payments made by Plaintiffs' assignors for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible as the primary payer. This data matching process can also be applied class-wide by matching Defendants' EDI with the Class Members' EDI to identify unreimbursed conditional payments made by the Class Members for accident-related medical expenses on behalf of their Enrollees for which Defendants are responsible.

61.     Using the MSP System, Plaintiffs have identified multiple instances in which Plaintiffs' Assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendants. Plaintiffs' Assignors and the Class Members have each suffered an injury-in-fact as a result of Defendants' failure to meet their statutory payment and reimbursement obligations, including Defendants entering into settlements with Enrollees.

62.     Plaintiffs have identified numerous instances where Defendants admitted, by reporting to CMS, that they were obligated (pursuant to no-fault and other liability policies) to provide primary payment on behalf of Enrollees. And in those instances where Defendants reported themselves responsible pursuant to "other liability" policies, they did so as a result of entering into settlement agreements with the Medicare beneficiary at issue. A sample list of these instances is attached hereto as Exhibit A. Again, this list is not complete, and discovery is needed to fully identify the scope of claims, beneficiaries, amounts, and assignors in this case.

63.     For the avoidance of doubt, the claims described on Exhibit A were identified by data analysis. Plaintiffs' Assignors made conditional payments on behalf of each of those Medicare beneficiaries which payments were subject to overlapping primary coverage from the Defendants. Plaintiffs seek to recover conditional payments made by Plaintiffs' Assignors on behalf of the specified Enrollees in each of those instances.[8] Plaintiffs identified these claims by comparing Plaintiffs' assignors claims data against two sets of documents: Defendants' filings with CMS under 42 U.S.C. § 1395y(b)(7)-(9), which obligates insurers like Defendants to report the claims for which they are primary payers, and certain of Defendants' *reported* settlements to which Plaintiffs had access.

64.     Plaintiffs have also identified instances where Defendants are identified in police crash and incident reports[9] as the insurer contractually obligated (pursuant to no-fault policies) to provide primary payment on behalf of Enrollees for unreimbursed conditional payments made by

---

[8] Additional information regarding the Medicare beneficiaries referenced on Exhibit A will be made available to Defendants upon request. That information has been reserved in order to ensure protection of personal information in accordance with HIPAA.

[9] Police crash and incident reports are only publicly available in a handful of jurisdictions, including Connecticut, Florida, Georgia, Ohio and Texas.

Plaintiffs' assignors in connection with accident-related medical expenses.

65.     The MSP System also identifies numerous other instances in which Plaintiffs' assignors made conditional payments on behalf of Enrollees for which the proper primary payer cannot be identified because (i) the primary payer has failed to report its primary payer responsibility as required by the MSP Law, or (ii) police crash and incident reports that would identify the appropriate primary payer are not available to Plaintiffs in the jurisdiction in which the accident occurred. Utilizing the MSP System to perform data-matching of Plaintiffs' assignors' EDI with Defendants' EDI, however, would allow Plaintiffs to identify with specificity those unreimbursed conditional payments for accident-related medical expenses.

66.     The allegations set forth herein plainly demonstrate that Plaintiffs' assignors suffered damages as a direct result of Defendants' failures to reimburse conditional payments as required under the MSP Law.

67.     In addition, Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which ... are not reasonable and necessary for the diagnosis or treatment of illness or injury."

68.     Because this section contains an express condition of payment – that is, "no payment may be made" – it explicitly classifies each Medicare payment for a particular item or service be "reasonable and necessary."

69.     Once an MA Plan bears the expense for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

70.     The items and services received by and paid on behalf of Plaintiffs' assignors' enrollees were reasonable and necessary to treat the injuries suffered by each of the Enrollees.

71.     Defendants' knowledge that they owe primary payments is evidenced by their filings with HHS pursuant to 42 U.S.C. § 1395y(b)(7)-(9) and the settlements reached between the Defendants and Plaintiffs' assigned enrollees. By virtue of Defendants' own actions, settlements, and reporting, Defendants had actual and constructive knowledge of their primary payer obligations to Plaintiffs Assignors, the Class Members and the entire Medicare Advantage system. *See MSP Recovery Claims, Series LLC, v. ACE American Ins. Co.*, 18-12139 2020 WL 5365978, at *10 (11th Cir. Sept. 4, 2020)  (finding that 42 U.S.C. § 1395y(b)(7)-(9) obligates insurers . . . to report claims for which they are primary payers, and the filings with HHS evidence defendant's actual knowledge that they owe primary payments, including the primary payments for which Plaintiffs seek reimbursement).

72.     Further, when Defendants settle with a Medicare beneficiary, constructive knowledge that they owe primary payment is imputed. *Id.* (citing *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 903 (11th Cir. 2003) (holding that a complaint, "sufficiently alleges constructive knowledge" on behalf of the primary payer based on the primary payer's entry into a settlement agreement with beneficiaries)).

73.     For every instance that Defendants reported pursuant to 42 U.S.C. § 1395y(b)(7)-(9) they had actual knowledge of their status as primary payers who should have paid for or reimbursed Plaintiff's assignors and the Class Members.

74.     For every instance that Defendants settled with a Medicare beneficiary enrolled in an MA Plan administered by Plaintiffs' assignors and the Class Members, Defendants had constructive knowledge that they owed primary payments to Plaintiffs Assignors and the Class Members.

## **CLASS ACTION ALLEGATIONS**

75.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' accident-related medical expenses, when Defendants should have made those payments as primary payers in the first instance or reimbursed the Class Members.

76.     As discussed in this class action Complaint, Defendants have failed to appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP Law. This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members. Class action law has long recognized that when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm. This case is well suited for class-wide resolution.

77.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments. The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers. Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

78.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, adequacy, and ascertainability shown as follows:

    a. **Numerosity**:  Joinder of all members is impracticable. Upon information and belief, there are hundreds of MA Plans and first tier entities (including their

assignees) throughout the United States who were not reimbursed by Defendants after they entered into a settlement with a Medicare beneficiary enrolled in a MA Plan. Thus, the numerosity element for class certification is met.

b. **Commonality**: Questions of law and fact are common to all members of the Class. Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C. Defendants failed to reimburse conditional payments, report settlements and report their Ongoing Responsibility for Medicals ("ORM") involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course. Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse MA Plans pursuant to the MSP Law. Each Class Member shares the same needed remedy, *i.e.*, reimbursement. Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Enrollees, as a result of Defendants' practice and course of conduct in failing to properly providing appropriate reimbursement.

c. **Typicality**: Plaintiffs' claims are typical of the Class Members' claims, as all have been damaged in the same manner. Plaintiffs' and the Class Members' claims have the same essential characteristics, arise from the same course of conduct, and share the same legal theory. As the putative class representatives, Plaintiffs possess the same interests and suffered the same injury as the other Class Members, thereby demonstrating a legally sufficient nexus between Plaintiffs' claims and the Class

Members' claims. Plaintiffs' claims are typical of the Class Members' claims because Defendants failed to make primary payments for Enrollees' accident-related medical expenses, which they were obligated to do by their settlements. Plaintiffs' claims are typical because Plaintiffs, like the Class Members, have a right to relief for Defendants' failure to reimburse Plaintiffs' assignors and the Class Members for their conditional payments of Enrollees' accident-related medical expenses. Plaintiffs' and the Class Members' claims are based on the same statutes, regulations, legal theories and factual situations. Defendants' business practices, acts and omissions are materially the same with respect to Plaintiffs' and the Class Members' claims, as will be Defendants' legal defenses. Plaintiffs' claims are, therefore, typical of the Class.

d. **<u>Adequacy</u>**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. **<u>Ascertainability</u>**:  Locating members of the Class would be relatively simple, since CMS maintains records of all MA Plans, first tier entities, and downstream entities, and providing notice to such entities could be accomplished by direct communication.

79.    The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the

Class ("Damages Class"). Defendants, whether deliberately or not, failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving Plaintiffs, as assignees of the right to recovery, and Class Members of their statutory right to reimbursement.

80.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. Based on these practices, Plaintiffs maintain a reasonable methodology for generalized proof of class-wide impact using the MSP System. The MSP System captures, compiles, synthesizes and analyzes large amounts of data to identify claims for reimbursement of conditional payments. This case will not present manageability problems as compared to non-electronic data driven class actions. There is no need for a fact-specific individual analysis of intent or causation, and damages will be calculated based upon the total fee-for-service amounts associated with the payments made on behalf of Enrollees. Plaintiffs are capable of using the MSP System to identify and quantify Class Members' claims, as they have done for their own claims.

81.     Proceeding with a Damages Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated assignors to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

82.     Administering the proposed Damages Class will be relatively simple. Defendants provided no-fault and other liability policies to claimants who are also Medicare beneficiaries. Once that data identifying these policies is compiled and organized, Plaintiffs can determine which policyholders were Medicare beneficiaries during the applicable time. Then, using the database, Plaintiffs and the Class Members can identify unreimbursed payments made for accident-related medical expenses where Defendants were primary payers.

## CLASS DEFINITION

83.     The putative class (referred to herein as "Class Members") is defined as:

All Medicare Advantage Plans and downstream actors (or their assignees) that have borne the cost of a conditional payment in providing benefits under Medicare Part C, in the United States of America and its territories, who made payments for a Medicare Enrollee's medical expenses where Defendant:

(1) is the primary payer by virtue of having settled a claim with a Medicare Advantage Plan Enrollee;

(2) settled a dispute to pay for medical expenses with a Medicare Advantage Plan Enrollee; and

(3) failed to reimburse Medicare Advantage Plans and downstream actors (or their assignees) for their conditional payments upon settling with a Medicare Enrollee.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

84.     All conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants.

## CAUSES OF ACTION

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

85.     Plaintiffs re-allege and incorporate herein by reference each of the allegations contained in paragraphs 1 – 84 as if fully set forth herein.

86.     Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly situated parties.

87.     The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016).

88.     Defendants' no-fault and liability policies are primary plans, which rendered Defendants primary payers for accident-related medical expenses.

89.     As part of providing Medicare benefits to Medicare beneficiaries enrolled under the Medicare Advantage program, the Class Members and Plaintiffs' assignors bore the expense for items and services which were also covered by no-fault policies issued by Defendants.

90.     More specifically, Plaintiffs' assignors' and the Class Members' Enrollees were also covered by no-fault policies issued by Defendants.

91.     In addition, Defendants entered into settlements with Enrollees of Plaintiffs' assignors relating to accidents but failed to reimburse Plaintiffs' assignors and the putative Class Members for accident-related medical expenses borne by Plaintiffs' assignors and the putative Class Members on behalf of Enrollees. Defendants are liable for reimbursement of these accident-related medical expenses even if they subsequently paid out the maximum benefits under the policies.

92.     Because Defendants are primary payers, the Medicare payments for which Plaintiffs seek reimbursement were conditional payments under the MSP Law.

93.     Defendants were required to timely reimburse Plaintiffs' assignors and Class Members for their conditional payments of Enrollees' accident-related medical expenses. *See* 42

xxiv

U.S.C. § 1395y(b)(2)(ii); 42 C.F.R. § 411.22(b)(3); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). Defendants failed to do so.

94.     Plaintiffs and the Class Members have suffered money damages as a direct result of Defendants' failure to reimburse the accident-related medical expenses.

95.     Defendants have derived substantial profits by placing the burden of financing medical treatments for their policyholders on the shoulders of Plaintiffs' assignors and the Class Members.

96.     In this case, Defendants failed to administratively appeal Plaintiffs' assignors' rights to reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety of amounts paid.

97.     Plaintiffs, for themselves and on behalf of the Class Members, bring this claim pursuant to 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from Defendants for their failure to make appropriate and timely reimbursement of conditional payments for Enrollees' accident-related medical expenses.

**COUNT II**
**<u>Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract</u>**

98.     Plaintiffs re-allege and incorporate herein by reference each of the allegations contained in paragraphs 1 – 84 as if fully set forth herein.

99.     Pursuant to the MSP Law, Plaintiffs' assignors are subrogated to the right to recover unreimbursed conditional payments from Defendants for Defendants' breach of contract with their insured. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an accident, and Defendants failed to meet that obligation. This obligation was, instead, fulfilled by Plaintiffs' assignors and other Class Members. Under the MSP Law, Plaintiffs are permitted, standing in their assignors' shoes, to subrogate the Enrollee's/insured's right of

action against Defendants. *See* 42 C.F.R. § 411.26.

100.    Plaintiffs complied with all conditions precedent to the filing of this action, to the extent applicable.

101.    Defendants failed and/or refused to make complete payments for Enrollees' accident-related expenses as required by their contractual obligations.

102.    Defendants failed to pay each Enrollee's covered losses, and Defendants have no reasonable proof to establish that they were not primary payers and, therefore, not responsible for the payment.

103.    Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein. Plaintiffs and the Class Members processed and paid accident-related medical expenses and are entitled to recover up to the statutory policy limits for each Enrollee's medical expenses related to the subject accidents, pursuant to their agreements with CMS and the provider of services.

## JURY TRIAL DEMAND

104.    Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

a.    find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and certify the respective Class;

b.    designate Plaintiffs as representatives for the respective Class Members and Plaintiffs' undersigned counsel as Class Counsel for the respective Class; and

c.    issue a judgment against Defendants that:

i.      grants Plaintiffs and the Class Members reimbursement of double damages for those monies to which the Class is entitled under 42 U.S.C. § 1395y(b)(3)(A), as alleged in Count I;

ii.     grants Plaintiffs and the Class Members reimbursement of damages for those monies to which the Class is entitled pursuant to their direct right of recovery for breach of contract, as alleged in Count II;

iii.    grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

iv.     grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: October 12, 2020                    Respectfully Submitted:


**MSP RECOVERY LAW FIRM**
2701 S. Le Jeune Rd.
10th Floor
Coral Gables, Florida 33134
Telephone: (305) 614-2222

*/s/* John H. Ruiz
John H. Ruiz
Fla. Bar No. 928150
jruiz@msprecoverylawfirm.com
Michael O. Mena
Fla. Bar No. 010664
mmena@msprecoverylawfirm.com
Secondary:serve@msprecoverylawfirm.com


**Armas Bertran Zincone**
4960 SW 72nd Avenue, Suite 206
Miami, Florida 33155
Telephone: (305) 461-5100

Alfredo Armas
Fla. Bar No. 100096
alfred@armaslaw.com
nmarrero@armaslaw.com
barbi@armaslaw.com
Eduardo Bertran
Fla. Bar No. 100096
ebertran@armaslaw.com
Francesco Zincone
Fla. Bar No. 100096
fzincone@armaslaw.com

Christopher L. Coffin (to be admitted *pro hac vice*)
**PENDLEY, BAUDIN & COFFIN, LLP**
1100 Poydras Street, Suite 2505
New Orleans, Louisiana 70163
Telephone:      (504) 355-0086
Facsimile:       (504) 355-0089
ccoffin@pbclawfirm.com

*Counsel for Plaintiffs*

## **APPENDIX 1**

### **CMS' Standard for Storing Digital Health Insurance Claims Data**

1.     It is the custom and practice of CMS and primary plans to maintain records in a detailed electronic format. According to the U.S. Department of Health and Human Services (HHS), CMS, federal statutes, and industry best practices and guidelines, the standard format for storing digital health insurance claims data is an electronic data interchange ("EDI") format called 837P ("837").

   a.   The 837 standard is mandated by the federal government and used federal and state payors such as Medicare and Medicaid.

   b.   The 837 standard is also used by private insurers, hospitals, clinics, physicians and other health care providers (i.e., HIPAA covered entities) who typically adopt CMS standards.

   c.   Paper claims are captured in the CMS 1500, UB04, and UB92 forms, but electronically, the standard for storing data is the 837 format.

2.     Essential components of an 837-claim file include but are not limited to the date(s) of service, diagnosis code(s) and medical procedure code(s).

   a.   <u>Dates (including dates of service)</u>: the standard format for dates in electronic health care claims is YYYYMMDD, CCYYMMDD, or MM/DD/YYYY.

i.  According to industry best practices and guidelines, and HHS and CMS, the standard format for expressing dates in healthcare insurance claims data is CCYYMMDD (CC representing two numeric digits to indicate Century, YY representing two numeric digits for year, MM representing two digits for the month, and DD representing two digits for the day of the month). Sometimes this is alternately expressed as YYYYMMDD.[10]

ii. The CCYYMMDD date format standard has been in place for many years. *See* CMS Guidance for 2010[11], 2011[12], 2012[13], 2013[14], 2014[15], and 2016.[16]

---

[10] *See* Medicare Claims Processing Manual Chapter 3 and CMS Manual System, Pub 100-08 Medicare Program Integrity, Transmittal 721.

[11] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 761 (Aug. 20, 2010), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R761OTN.pdf.

[12] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 988 (Oct. 28, 2011), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R988OTN.pdf.

[13] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1050 (Feb. 29, 2012), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/R1050OTN-.pdf.

[14] CMS Manual System, Pub 100-20 One-Time Notification, Transmittal 1277 (Aug. 9, 2013), *available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R1277OTN.pdf.

[15] Memorandum from Tracey McCutcheon, Acting Director, Medicare Drug Benefit and C & D Data Group, and Laurence Wilson, Director, Chronic Care Policy Group, to All Part D Plan Sponsors and Medicare Hospice Providers (Mar. 10, 2014) (on file with author), *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/Hospice/Downloads/Part-D-Payment-Hospice-Final-2014-Guidance.pdf.

[16] Memorandum from Cheri Rice, Director, Medicare Plan Payment Group, and Cathy Carter, Director, Enterprise Systems Solutions Group, to All Medicare Advantage, Prescription Drug Plan, Cost, PACE, and Demonstration Organizations Systems Staff (Nov. 9, 2016) (on file with author), *available at* https://www.cms.gov/Research-Statistics-Data-and-Systems/CMS-

xxx

    iii.   CMS has also accepted the MM/DD/YYYY format for its local coverage determination data.[17]

    iv.   The purpose of the date format is to ensure that dates of health care claims such as the date a medical procedure was provided (date of service or "DOS") in comparison to the date of settlement, can be searched, sorted and properly selected as compensable or non-compensable claims.

    v.   In general, ensuring the accuracy of dates, and other data is essential to analyzing claims data files by health insurers and others who may need to determine the value of claims, the relevance of particular claims with respect to patient conditions, dates of care, or whether the claim is compensable.

   b.  <u>Medical Diagnosis and Procedure Codes</u>:

    i.   Diagnosis-Related Group (DRG) – DRGs are a statistical system of classifying any inpatient stay into groups for the purposes of payment. The DRG classification system divides possible diagnoses into more than 20 major body systems and subdivides them into almost 500 groups for the purpose of Medicare reimbursement. Factors used to determine the DRG payment amount include the diagnosis involved as well as the hospital

---

Information-Technology/mapdhelpdesk/Downloads/Announcement-of-the-February-2017-Software-Release.pdf.

[17] Centers for Medicare & Medicaid Services, Local Coverage Determination (LCD) Date of Service Criteria, *available at* https://www.cms.gov/medicare-coverage-database/search/lcd-date-search.aspx?DocID=L35093&bc=gAAAAAAAAAAA.

resources necessary to treat the condition.[1819]

ii.  International Classification of Diseases (ICD-9 and ICD-10) – Hospitals report diagnosis information using codes from the ICD-9-CM (the International Classification of Diseases, 9th Edition, Clinical Modification if the date of service is before October 1, 2015) or ICD-10 CM (if the date of service is on or after October 1, 2015).

iii.  Inpatient medical procedures ICD-9 Volume 2 and Volume 3 and ICD-10 PCS – These codes are used to describe inpatient medical procedures, excluding the physician's bill.

iv.  Current Procedural Terminology ("CPT") – CPT[20] codes are a standardized listing of descriptive terms and identifying codes for reporting outpatient medical services and procedures as well as both inpatient and outpatient physician services. The current version, CPT-4, is maintained by the American Medical Association and is an accepted standard by the National Committee on Vital Statistics or NCVHS.[21]

---

[18] Gillian I. Russell, Terminology, in FUNDAMENTALS OF HEALTH LAW 1, 12 (American Health Lawyers Association 5th ed., 2011).

[19] Beginning in 2007, CMS overhauled the DRG system with the development of "severity-adjusted DRGs" and began to replace DRGs with "Medicare-severity DRGs" or "MS-DRGs" through a three-year phase-in period that blended payment under the old DRG system and the MS-DRG system. In a small number of MS-DRGs, classification is also based on the age, gender, and discharge status of the patient. The diagnosis and discharge information are reported by the hospital using codes from the ICD-9-CM or ICD-10-CM if the date of service is on or after October 1, 2015.
[20] CPT codes and descriptions are copyrights of the American Medical Association Current Procedural Terminology.

[21] National Committee on Vital and Health Statistics, Consolidated Health Informatics Initiative, *available at* http://www.ncvhs.hhs.gov/meeting-calendar/agenda-of-the-december-9-10-2003-

v.  Ambulatory Patient Classification (APC) – Services performed in outpatient ambulatory surgery centers may be classified by APCs. CMS assigns individual services to APCs based on similar clinical characteristics and similar costs.[22]

vi.  Healthcare Common Procedure Coding System (HCPCS) – HCPCS is mainly used to indicate medical supplies, durable medical goods, ambulance services, and durable medical equipment, prosthetics, orthotics and supplies (DMEPOS).[23]

vii.  Medical Data Code Sets – The standard Code set for medical diagnosis and procedure codes in health care claims is a series of digits as specified in 45 C.F.R. § 162.1002.

viii.  The purpose of standard diagnosis code sets is to use a universal terminology in describing patients with certain conditions to determine compensable or non-compensable claims.

3.  CMS primarily utilizes two systems of classification: (1) International Classification of Diseases ("ICD-9" and "ICD-10") medical diagnosis codes; and (2) Current Procedural Terminology ("CPT-4") procedure codes. *See* 45 C.F.R. § 162.1002.

---

ncvhs-subcommittee-on-standards-and-security-hearing/consolidated-health-informatics-initiative-final-recommendation-information-sheet-billingfinancial-for-the-december-9-2003-ncvhs-subcommittee-on-standards-and-security-hearing/.

[22] Centers for Medicare and Medicaid Services, Medicare Learning Network, Hospital Outpatient Prospective Payment System (Feb. 2019), *available at* https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/HospitalOutpaysysfctsht.pdf.

[23] American Academy of Professional Coders (AAPC), https://www.aapc.com/resources/medical-coding/hcpcs.aspx.

**APPENDIX 2**

**Assignments**

**a. Plaintiff MSPRC Standing**

1.      Certain series of MSPRC have executed irrevocable assignments of any and all rights to recover payments made on behalf of their Assignors' health plan members and enrollees. These assignments authorize the series and, in turn MSPRC through its operating agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits. For example, and only to serve to further demonstrate standing, MSPRC alleges a few of the assignments below as examples.

2.      On September 21, 2015, **7th Avenue Medical Plaza ("7AVEMED")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery 15-473, LLC. Specifically, the 7AVEMED Assignment states the following:

> [7AVEMED] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of 7AVEMED's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [7AVEMED] that [7AVEMED] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [7AVEMED] arising from or relating to the Assigned Claims.

7AVEMED Assignment, at 1.1.

3.      On June 12, 2017, MSP Recovery 15-473, LLC irrevocably assigned all rights acquired

under the 7AVEMED Assignment to Series 15-09-32, a designated series of Plaintiff MSPRC:

> Assignor…irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement
> dated September 21, 2015, by and among [7AVEMED] and [MSP Recovery 15-
> 627, LLC] . . .

4.      On May 7, 2019, **Administracion de Servicios de Atencion Primaria, Inc. ("ASAP")**

irrevocably assigned all its rights and claims to recover against any liable entity (including

defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to

MSP Recovery, LLC. Specifically, the ASAP Assignment states the following:

> [ASAP] irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of [ASAP's] right, title,
> ownership and interest in and to (i) all Claims existing on the date hereof, whether
> based in contract, tort or statutory right, and all related recovery rights arising from
> and related to all claims data transferred to MSP Recovery, and (ii) any and all
> causes of action and legal or equitable rights (including, but not limited to,
> subrogation) to pursue and/or recover monies related to the Claims that [ASAP]
> had, may have had, or has asserted against any party in connection with the Claims
> and (iii) all causes of action and rights and claims, legal or equitable, against
> primary payers, Responsible Parties and/or third parties that may be liable to
> [ASAP] arising from or relating to the Claims, including claims under consumer
> protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the
> "Assigned Claims").

ASAP Assignment, at 1.1.

5.      On May 1, 2020, MSP Recovery, LLC irrevocably assigned all rights acquired under the

**ASAP** Assignment to Series 19-05-1023, a designated series of Plaintiff MSPRC:

> Assignor irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,

ownership and interest in and to the Claims and Assigned Claims, and all proceeds and products thereof) as such terms are defined in the Recovery Agreement, by and among ASAP and MSP Recovery, LLC.

6.      On December 10, 2015, **Alianza Profesional de Cuidado Medico Inc. ("APCM")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery 15-627, LLC. Specifically, the APCM Assignment states the following:

> [APCM] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [APCM's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [APCM] that [APCM] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [APCM] arising from or relating to the Assigned Claims.

APCM Assignment, at 1.1.

7.      On June 12, 2017, MSP Recovery 15-627, LLC irrevocably assigned all rights acquired under the APCM Assignment to Series 15-12-404 LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement dated December 10, 2015, by and among [APCM] and [MSP Recovery 15-627, LLC] . . .

8.      On October 28, 2019, **Armor Correctional Health Services, Inc. ("ACHS")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the ACHS Assignment states the following:

xxxvi

> [ACHS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [ACHS's] right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to all claims data transferred to MSP Recovery, and (ii) any and all claims, demands and causes of action of any nature whatsoever relating to payments for healthcare services provided to [ACHS's] patients and enrollees and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [ACHS] had, may have had, or has asserted against any party in connection with the Claims and (iii) all claims, rights, demands and causes of action of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [ACHS] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "Assigned Claims").

ACHS Assignment, at 1.1.

9.      On November 6, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the ACHS Assignment to Series 19-05-1042, a designated series of Plaintiff MSPRC:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "Assigned Claims") as such terms are defined in the Recovery Agreement.

10.      On December 16, 2015, **Arse, Inc. ("ARSI")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC ("MSP Recovery"). Specifically, the ARSI Assignment states the following:

> [ARSI] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [ARSI's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [ARSI] that [ARSI] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [ASRI] arising from or relating to the Assigned Claims.

ARSI Assignment, at 4.1.

11.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the ARSI

Assignment to Series 15-12-406, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated December 16, 2015, by
> and among [ARSI] and [MSP Recovery, LLC] . . .

12.    On February 28, 2017, **Arturo Corces MD PA dba Miami Institute for Joint

Reconstruction ("MIJR")** irrevocably assigned all its rights and claims to recover against any

liable entity (including defendants) for payments made on behalf of their enrollees under Medicare

Parts A, B, and D to MSP Recovery, LLC. Specifically, the MIJR Assignment states the following:

> [MIJR] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of Client's right,
> title, ownership and interest in and to all Claims existing on the date hereof, whether
> based in contract, tort, statutory right, and any and all rights (including, but not
> limited to, subrogation) to pursue and/or recover monies for [MIJR] that [MIJR]
> had, may have had, or has asserted against any party in connection with the Claims
> and all rights and claims against primary payers and/or third parties that may be
> liable to [MIJR] arising from or relating to the Claims, including claims under
> consumer protection statutes and laws, and all information relating thereto, all of
> which shall constitute the "Assigned Claims."

MIJR Assignment, at 4.1.

13.    On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

MIJR Assignment to Series 17-02-565, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated February 28, 2017, by
> and among [MIJR] and [MSP Recovery, LLC] . . .

14.     On February 26. 2016, **Asociacion Medicos Selectos de la Montaña, Inc. ("AMSM")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the AMSM Assignment states the following:

> [AMSM] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [AMSM's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [AMSM] that [AMSM] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [AMSM] arising from or relating to the Assigned Claims.

AMSM Assignment, at 4.1.

15.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the AMSM Assignment to Series 16-03-441, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated February 26, 2016, by and among [AMSM] and [MSP Recovery, LLC] . . .

16.     On March 1, 2016, **Asomante Medical Group, Inc. ("AMGP")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the AMGP Assignment states the following:

> [AMGP] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [AMGP's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [AMGP] that [AMGP] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [AMGP] arising from or relating to the Assigned Claims.

AMGP Assignment at 4.1.

17.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the AMGP

Assignment to Series 16-03-444, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated March 1, 2016, by and
> among [AMGP] and [MSP Recovery, LLC] . . .

18.     On August 15, 2018, **Aspire Health Plan ("AHPN")** irrevocably assigned all its rights

and claims to recover against any liable entity (including defendants) for payments made on behalf

of their enrollees under Medicare Parts A, B, and D to Series 18-10-934, a designated series of

Plaintiff MSPRC. Specifically, the AHPN Assignment as states the following:

> [Assignor] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of Assignor's
> right, title, ownership and interest in and to (i) all Claims existing on the date hereof,
> whether based in contract, tort, or statutory right, and all related recovery rights
> arising from and related to all claims data transferred to [MSP Recovery] and (ii)
> any and all claims, demands and causes of action of whatsoever nature relating to
> payments for healthcare services provided to Assignor's members and enrollees
> and related legal or equitable rights (including, but not limited to, subrogation) to
> pursue and/or recover monies related to the Claims that Assignor had, may have
> had, or has asserted against any party in connection with the Claims and (iii) all
> claims, rights, demands and causes of action of whatsoever nature, legal or
> equitable, against primary payers, Responsible Parties, and/or third parties that may
> be liable to Assignor arising from or relating to the Claims, including Claims under
> consumer protection statutes and laws (all of the Claims and rights set forth in (i)-
> (iii), the "Assigned Claims).

AHPN Assignment at 1.1.1.

19.     On June 26, 2019, AvMed, Inc. entered into a Claims Purchase Agreement & Assignment

with Series 17-03-615, a designated series of MSPRC, whereby it irrevocably assigned all rights

to recover conditional payments made on behalf of its Enrollees (the "AvMed Assignment"). The

AvMed Assignment expressly provides, in pertinent part:

Assignor irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its designated series, successors and assigns, any and all of Assignor's right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort or statutory right, and all related recovery rights arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC), and (ii) any and all causes of action, claims and demands of any nature whatsoever relating to payments for health care services provided to Assignor's members and enrollees, and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Assignor had, may have had, or has asserted against any party in connection with the Claims; and (iii) all causes of action, claims, rights and demands of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Assignor arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the items set forth in (i)-(iii), the "Assigned Claims") . . . . The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

AvMed Assignment at § 1.1.1.

20.     The "Assigned Claims" only exclude "those claims described on Schedule A" and are defined in the AvMed Assignment as "Excluded Claims." *Id.* Schedule A describes the Excluded Claims as the "Client's right to recover, under any theory, against its network healthcare providers and current and former members" as well as "Claims arising from and related to the GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico (the "GSK Cidra matter")[.]" Defendants are not AvMed "network healthcare providers" or "current [or] former members" and the claims at issue in this action do not relate "GlaxoSmithKline's manufacturing facility in Cidra, Puerto Rico."

21.     The AvMed Assignment contemplated that the Parties would also enter into a separate "Stand-Alone Assignment Agreement" further evidencing the AvMed Assignment. § 6.1.

22.     The AvMed Assignment also provided for a due diligence period wherein the Parties would provide various deliverables to each other and, at the conclusion of which, the compensation amount would be delivered and various transaction documents – including but not limited to the

AvMed Assignment and the Stand-Alone Assignment Agreement – would be released from escrow. § 3.2.

23.     Following execution of the AvMed Assignment, the Parties mutually agreed to extend the due diligence period several times. Upon completion of the due diligence period and satisfaction of the various deliverables and agreed upon conditions, the Parties finalized the transaction, including exchanging compensation and executing the Stand-Alone Assignment Agreement.

24.     On May 30, 2019, BCBSRI entered into a Statement of Work and Claims Purchase Agreement & Assignment with MSP Recovery, LLC whereby it irrevocably assigned to MSP Recovery, LLC all rights to recover conditional payments pursuant to the MSP law (the "BCBSRI Assignment"). The BCBSRI Assignment specifically states:

> Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to (i) all Claims for which it has sent claims data to MSP Recovery, LLC, whether based in contract, tort or statutory right, and all related to recovery rights arising from and related all claims data transferred to MSP Recovery, LLC, and (ii) any and all causes of action, claims and demands of whatsoever nature relating to payments for healthcare services provided to Client's members and enrollees, and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that Client had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action, claims, rights and demands of whatsoever nature, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "*Assigned Claims*").

BCBSRI Assignment at ¶ 1.2.

25.     Thereafter, effective on June 10, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the BCBSRI Assignment to Series 16-05-461, a designated series of MSPRC (the

"Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 16-05-461 states:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively the "***Assigned Claims***") as such terms are defined in the ***Recovery Agreement***. This Assignment includes all the Assigned Claims irrespective of when the claims were vested in ***BCBS Rhode Island***, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to ***BCBS Rhode Island*** arising from or relating to the Claims and all information relating thereto.

Series Assignment, at § 1.2.

26.     The BCBSRI Assignment contemplated that the Parties would enter into a "stand-alone assignment document evidencing" the BCBSRI Assignment at § 5.1.

27.     Following the contemplated due diligence period, BCBSRI executed the stand-alone assignment document on August 14, 2019, effective May 30, 2019, and approved and consented to the Series Assignment and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSPRC or any of its designated series, including but not limited to, Series 16-05-461.

28.     On December 18, 2018, Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. irrevocably assigned to MSP Recovery, LLC any and all of its rights to recover conditional payments made on behalf of its Enrollees ("BCBSMA Assignment"). The BCBSMA Assignment expressly provides, in pertinent part:

> Client irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all recovery and reimbursement rights against Responsible Parties arising from and related to the Medicare Secondary Payer Act in connection with Client's Claims that are identified on a data transfer following execution of this Assignment and Recovery Agreement, exclusive of the claims identified on a carve out list, and including any and all legal or equitable rights to pursue and/or recover monies related to the Claims that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Client arising from or relating to the Claims, all of the described Claims herein constituting the "Assigned Claims Rights".

BCBSMA Assignment § 1.1.1.

29.     The "Assigned Claims Rights" excluded "claims identified on a carve out list" as well as "(i) any Claims rights belonging to Client that are currently being pursued directly by Client or by another Client vendor, all of which will be specifically identified by Client and included on a Carve Out List, and (ii) unless approved by Client, any claims or lien recoveries in class action, antitrust, medical device, pharmaceutical or multidistrict litigation not directly related to the Medicare Secondary Payer statute." *Id.* at § 1.1.4.

30.

31.     On April 10, 2019, MSP Recovery, LLC assigned the rights it had acquired in the BCBSMA Assignment to Series 15-11-388, a designated series of MSPRC ("Series Assignment"). The Series Assignment from MSP Recovery, LLC to Series 15-11-388, which was ratified and approved by BCBSMA, states:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", any and all proceeds and products thereof (collectively the ***"Assigned Claims"***) as such terms are defined in the Recovery Agreement.

32.    On February 18, 2016, **Broward Primary Partners, LLC, ("BPPL")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the BPPL Assignment states the following:

> [BPPL] hereby assigns, transfers, conveys, sets over and delivers to [MSP Recovery], or its assigns, to the extent it is legally permitted  any and all of [BPPL's] right, title, ownership and interest in and to all rights and entitlements, that [BPPL] has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to [BPPL] arising from or relating to the Assigned Claims.

BPPL Assignment, at 1.1.

33.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the BPPL Assignment to Series 16-02-437, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Claim(s) Cost Recovery Agreement and Assignment of Claims and Causes of Action dated February 18, 2016, by and among [BPPL] and [MSP Recovery, LLC] . . .

34.    On February 4, 2016, **Canovanas Medical Group ("CMG")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the CMG Assignment states the following:

> [CMG] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [CMG's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [CMG] that [CMG] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [CMG] arising from or relating to the Assigned Claims.

CMG Assignment, at 4.1.

35.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

CMG Assignment to Series 16-02-438, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated February 4, 2016, by
> and among [CMG] and [MSP Recovery, LLC] . . .

36.     On February 22, 2016, **Centro Medico Salinas, Inc. ("CMDS")** irrevocably assigned all

its rights and claims to recover against any liable entity (including defendants) for payments made

on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

CMDS Assignment states the following:

> [CMDS] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, any and all of [CMDS's] right, title, ownership and interest
> in and to all rights and entitlements, and all information used to pursue and/or
> recover monies for [CMDS] that [CMDS] has, may have had, or has asserted
> against any party ("Assigned Claims"). This includes, but is not limited to, primary
> payors and/or third parties that may be liable to [CMDS] arising from or relating to
> the Assigned Claims.

CMDS Assignment, at 4.1.

37.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the CMDS

Assignment to Series 16-02-438, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated February 22, 2016, by
> and among [CMDS] and [MSP Recovery, LLC] . . .

38.     On February 13, 2019, **Clinica Las Mercedes, Inc. ("CLMS")** irrevocably assigned all

its rights and claims to recover against any liable entity (including defendants) for payments made

on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically,

the CLMS Assignment states the following:

> [CLMS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of [CLMS's] right,
> title, ownership and interest in and to (i) all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and all related recovery rights for all
> claims data transferred to MSP Recovery, LLC and (ii) any and all causes of action
> and legal or equitable rights (including, but not limited to, subrogation) to pursue
> and/or recover monies related to the Claims that [CLMS] had, may have had, or has
> asserted against any party in connection with the Claims and (iii) all causes of
> action and rights and claims, legal or equitable, against primary payers, Responsible
> Parties and/or third parties that may be liable to [CLMS] arising from or relating to
> the Claims, including claims under consumer protection statutes and laws (all of
> the Claims and rights set forth in (i)-(iii), the "Assigned Claims").

CLMS Assignment, at 1.1.1.

39.     On February 18, 2019, MSP Recovery irrevocably assigned all rights acquired under the

CLMS Assignment to Series 19-02-982, a designated series of Plaintiff MSPRC:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers
> to Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the "Claims" and "Assigned Claims", and all
> proceeds and products thereof (collectively, the "Assigned Claims") as such terms
> are defined in the Recovery Agreement.

40.     On April 30, 2018, **Community Health Providers, Inc. ("CHPI")** irrevocably assigned

all its rights and claims to recover against any liable entity (including defendants) for payments

made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC.

Specifically, the CHPI Assignment states the following:

> [CHPI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [CHPI's] right,
> title, ownership and interest in and to all Claims existing on the date hereof, whether

> based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [CHPI] that [CHPI] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [CHPI] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

CHPI Assignment at 4.1.

41.     On May 30, 2018, MSP Recovery irrevocably assigned all rights acquired under the CHPI Assignment to Series 19-02-982, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated April 30, 2018, by and among [CHPI] and [MSP Recovery, LLC] . . .

42.     On March 20, 2018, **Connecticare, Inc. ("Connecticare")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to Series 15-09-157, a designated series of Plaintiff MSPRC and to MSP Recovery, LLC, a Florida Limited Liability Company. Specifically, the ConnectiCare Assignment states the following:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all [claims against third parties], whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the [claims] and all rights and claims against primary payers and/or . . . third parties that may be liable to Assignor arising from or relating to the [claims], including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable.

> The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

ConnectiCare Assignment at 2.

43.     On April 4, 2018, MSP Recovery, LLC assigned the rights it acquired in the ConnectiCare

Assignment to Series 15-09-157, a designated series of MSPRC ("Series Assignment"). The Series

Assignment from MSP Recovery, LLC to Series 15-09-157, which was ratified and approved by

ConnectiCare, Inc., states:

> MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of … and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to **Series 15-09-157, a designated series of MSP Recovery Claims, Series LLC,** a Delaware series limited liability company ("Assignee"), and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all assigned Subject Medicare Recovery Claims, … as such terms may be defined in the March 20, 2018 Assignment Agreement[.]

44.     On December 16, 2015, **Corporacion Medica Oriental ("CMOC")** irrevocably assigned

all its rights and claims to recover against any liable entity (including defendants) for payments

made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically,

the CMOC Assignment states the following:

> [CMOC] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [CMOC's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [CMOC] that [CMOC] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [CMOC] arising from or relating to the Assigned Claims.

CMOC Assignment, at 4.1.

45.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the CMOC

Assignment to Series 15-12-407, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof)

as such terms are defined in the Recovery Agreement dated December 16, 2015, by
and among [CMOC] and [MSP Recovery, LLC] . . .

46.     On March 31, 2016, **Corporacion Puertorriqueña De Salud ("CPDS")** irrevocably

assigned all its rights and claims to recover against any liable entity (including defendants) for

payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery.

Specifically, the CPDS Assignment states the following:

> [CPDS] hereby assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of [CPDS's] right, title,
> ownership and interest in and to all Claims existing on the date hereof, whether
> based in contract, tort, statutory right, and any and all rights (including, but not
> limited to, subrogation) to pursue and/or recover monies for [CPDS] that [CPDS]
> had, may have had, or has asserted against any party in connection with the Claims
> and all rights and claims against primary payers and/or third parties that may be
> liable to [CPDS] arising from or relating to the Claims, including claims under
> consumer protection statutes and laws, and all information relating thereto, all of
> which shall constitute the "Assigned Claims".

CPDS Assignment, at 4.1.

47.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the CPDS

Assignment to Series 16-04-448, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated March 31, 2016, by
> and among [CPDS] and [MSP Recovery, LLC] . . .

48.     On September 24, 2018, **Dean Health Plan, Inc. ("DHPN")** irrevocably assigned all its

rights and claims to recover against any liable entity (including defendants) for payments made on

behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

DHPN Assignment states the following:

1

> [DHPN] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and or its assigns, any and all of [DHPN's] right, title, ownership and interest in and to all Claims furnished by [DHPN] to MSP, specifically, the Claims related to medical health care services that were rendered and paid for by [DHPN] for dates of service between July 1, 2011 and July 1, 2017, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [CPDS] that [CPDS] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [CPDS] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto.

DHPN Assignment, at 4.1.

49.    On August 15, 2019, MSP Recovery irrevocably assigned all rights acquired under the

DHPN Assignment to Series 15-09-354, a designated series of Plaintiff MSPRC:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively, the "Assigned Claims") as such terms are defined in the Recovery Agreement.

50.    On June 19, 2017, **Fallon Community Health ("FCHP")** irrevocably assigned all its

rights and claims to recover against any liable entity (including defendants) for payments made on

behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically,

the FCHP Assignment states the following:

> [FCHP] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [FCHP's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [FCHP] that [FCHP] had, may have had, or has asserted against any party in connection with Claims and all rights and claims against primary payers and/or third parties that may be liable to [FCHP] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

FCHP Assignment at 4.1.

51.     On June 20, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

FCHP Assignment to Series 17-04-631, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated June 19, 2017, by and
> among [FCHP] and [MSP Recovery, LLC] . . .

52.     On August 14, 2015, **Family Medicine Group, Inc. ("FMG")** irrevocably assigned all its

rights and claims to recover against any liable entity (including defendants) for payments made on

behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery 15-522, LLC.

Specifically, the FMG Assignment states the following:

> [FMG] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, or its assigns, in perpetuity, any and all of [FMG's] right, title,
> ownership and interest in and to all rights and entitlements, and all information and
> data used to pursue and/or recover monies for [FMG] that [FMG] has, may have
> had, or has asserted against any party including, but not limited to, primary payors
> and/or third parties that may be liable to [FMG] arising from or relating to the
> Assigned Claims.

FMG Assignment, at 1.1.

53.     On June 12, 2017, MSP Recovery 15-522, LLC irrevocably assigned all rights acquired

under the FMG Assignment to Series 15-09-271, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement
> dated August 14, 2015, by and among [FMG] and [MSP Recovery 15-522, LLC] .
> . .

54.     On October 6, 2017, **Family Physicians Group ("FPGI") dba of Family Physicians of**

**Winter Park. P.A.** irrevocably assigned all its rights and claims to recover against any liable entity

(including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B,

and D to MSP Recovery. Specifically, the FPGI Assignment states the following:

> [FPGI] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [FPGI's] right, title, ownership and interest in and to those Claims transferred to MSP Recovery for Claims' analysis and recovery pursuit on the date of transferring said claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [FPGI] that [FPGI] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [FPGI] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

FPGI Assignment at 4.1.

55.     On October 10, 2017, MSP Recovery irrevocably assigned all rights acquired under the

FPGI Assignment to Series 17-05-634, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated October 6, 2017, by and among [FPGI] and [MSP Recovery, LLC] . . .

56.     On February 26, 2016, **First Medical Center, Inc. ("FMCR")** irrevocably assigned all its

rights and claims to recover against any liable entity (including defendants) for payments made on

behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

FMCR Assignment states the following:

> [FMCR] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [FMCR's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [FMCR] that [FMCR] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [FMCR] arising from or relating to the Assigned Claims.

FMCR Assignment at 4.1.

57.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the FMCR

Assignment to Series 16-03-442, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee
> and its successors and assigns, any and all of Assignor's rights, title, ownership and interest
> in and to the [claims] (and all proceeds and products thereof) as such terms are defined in
> the Recovery Agreement dated February 26, 2016, by and among [FMCR] and [MSP
> Recovery, LLC] . . .

58.     On March 20, 2018, Health Insurance Plan of Greater New York, an EmblemHealth

company ("EHTH"), irrevocably assigned all rights to recover conditional payments made on

behalf of its Enrollees to Series 16-08-483, a designated series of MSPRC and to MSP Recovery,

LLC, a Florida Limited Liability Company ("EHTH Assignment"). The EHTH Assignment

expressly provides, in pertinent part:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> Assignee, and any of its successors and assigns, any and all of Assignor's right,
> title, ownership and interest in and to all Assigned Medicare Recovery Claims,
> whether based in contract, tort, statutory right, and any and all rights (including, but
> not limited to, subrogation) to pursue and/or recover monies that Assignor had, may
> have had, or has asserted against any party in connection with the Assigned
> Medicare Recovery Claims and all rights and claims against primary payers and/or,
> subject to the definition of Assigned Medicare Recovery Claims, third parties that
> may be liable to Assignor arising from or relating to the Assigned Medicare
> Recovery Claims, including claims under consumer protection statutes and laws,
> and all information relating thereto, as may be applicable…

> The transfer, grant, right, or assignment of any and all of Assignor's right, title,
> ownership, interest and entitlements in and to the Assigned Medicare Recovery
> Claims shall remain the confidential and exclusive property of Assignee or its
> assigns. This assignment is irrevocable and absolute.

59.     The "Medicare Recovery Claims" assigned to MSPRC include EHTH's "legal and

equitable rights to seek reimbursement and/or recover payments from primary payers . . .

responsible to [EHTH] directly or through rights conferred on [EHTH] pursuant to state and/or

federal law pertaining to beneficiaries, for Health Care Services provided to [EHTH's] Medicare

(as defined above) enrollees arising under state and/or federal laws, including common law

subrogation theories, that provide for the reimbursement of payments made by [EHTH] . . .

pursuant to a Medicare Advantage Plan[.]" *Id.* at p. 1.

60.     The "Assigned Medicare Recovery Claims" included the above-referenced

Medicare Recovery Claims, but excluded "Medicare Recovery Claims that [could] be asserted

against Assignor's members, enrollees and/or contracted providers" and Medicare Recovery

Claims that as of March 20, 2018 (the Effective Date of the agreement) had been assigned to and/or

were being pursued "by other recovery vendors" for services rendered within a defined six-year

time period. *Id*. These excluded claims are defined in the EHTH Assignment as "Assignor

Retained Claims." *Id*.

61.     On April 4, 2018, MSP Recovery, LLC assigned the rights it had acquired in the

EHTH Assignment to Series 16-08-483, a designated series of MSPRC ("Series Assignment").

The Series Assignment from MSP Recovery, LLC to Series 16-08-483, which was ratified and

approved by EHTH, states:

> MSP Recovery, LLC ("Assignor"), for and in consideration of the sum of … and
> other good and valuable consideration, the receipt and sufficiency of which is
> hereby acknowledged, hereby irrevocably assigns, sells, transfers, conveys, sets
> over and delivers to Assignee, **Series 16-08-483, a designated series of MSP**
> **Recovery Claims, Series LLC,** a Delaware Series Limited Liability Company, and
> its successors and assigns, any and all of Assignor's right, title, ownership and
> interest in and to the "Assigned Claims", "Claims", "Assigned Assets" "Assigned
> Medicare Recovery Claims" and "Assigned Documents" (and all proceeds and
> products thereof) as such terms may be defined in the March 20, 2018 Assignment
> Agreement[.]

62.     On December 10, 2015, **Grupo Cuidado Geriatrico Integral ("GCMMI")** irrevocably

assigned all its rights and claims to recovery against any liable entity (including defendants for

payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery 15-626, LLC. Specifically, the GCMMI Assignment states the following:

> [GCMMI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [GCMMI's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [GCMMI] that [GCMMI] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [GCMMI] arising from or relating to the Assigned Claims.

GCMMI Assignment, at 1.1.

63.     On June 12, 2017, MSP Recovery 15-626, LLC, irrevocably assigned all rights acquired under the GCMMI Assignment to Series 15-12-403, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement dated December 10, 2015, by and among [GCMMI] and [MSP Recovery 15-626, LLC] . . .

64.     On February 2, 2016, **Grupo Medico del Noreste, P.S.C. ("GMDN")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the GMDN Assignment states the following:

> [GMDN] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [GMDN's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [GMDN] that [GMDN] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [GMDN] arising from or relating to the Assigned Claims.

GMDN Assignment, 4.1.

65.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the GMDN Assignment to Series 16-02-429, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated February 2, 2016, by and among [GMDN] and [MSP Recovery, LLC] . . .

66.     On February 4, 2016, **Grupo Medico del Yunque, CSP ("GMDY")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the GMDY Assignment states the following:

> [GMDY] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [GMDY's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [GMDY] that [GMDY] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [GMDY] arising from or relating to the Assigned Claims.

GMDY Assignment, at 4.1.

67.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the GMDY Assignment to Series 16-02-428, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated February 4, 2016, by and among [GMDY] and [MSP Recovery, LLC] . . .

68.     On March 19, 2019, **Health Alliance Medical Plans, Inc. ("HEAL")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the HEAL Assignment states the following:

> [HEAL] assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [HEAL's] right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort, statutory

right, and all related recovery rights arising from the health care claims data transferred to MSP Recovery, and (ii) any and all causes of action and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [HEAL] had, may have had, or has asserted against any party in connection with the Claims and (iii) all causes of action and rights and claims, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [HEAL] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "Assigned Claims").

HEAL Assignment, at 1.1.1.

69.     On April 10, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under the

HEAL Assignment to Series 17-03-583, a designated series of Plaintiff MSPRC:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the "Claims" and "Assigned Claims", and all proceeds and products thereof (collectively, the "Assigned Claims") as such terms are defined in the Recovery Agreement.

70.     On August 28, 2015, **Health Care Advisor Services, Inc. ("HCAS")** irrevocably assigned

all its rights and claims to recovery against any liable entity (including defendants for payments

made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically,

the HCAS Assignment states the following:

> [HCAS] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [HCAS's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [HCAS] that [HCAS] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [HCAS] arising from or relating to the Assigned Claims.

HCAS Assignment at 4.1.

71.     On June 12, 2017, MSP Recovery, irrevocably assigned all rights acquired under the HCAS

Assignment to Series 15-08-27, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title,

> ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated August 28, 2015, by and among [HCAS] and [MSP Recovery, LLC] . . .

72.     Effective April 28, 2016, Health First Health Plans, Inc. ("HFHP"), a Medicare Advantage Organization, irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to MSP Recovery, LLC (the "HFHP Assignment"). The HFHP Assignment expressly provides, in pertinent part:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto . . . all of which shall constitute the "Assigned Claims."
>
> …
>
> The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

HFHP Assignment.

73.     On June 12, 2017, MSP Recovery, LLC assigned all rights acquired under the HFHP Assignment to Series 16-05-456, a designated series of MSP Recovery Claims, Series LLC (the "Series Assignment").  The Series Assignment states:

> [T]he undersigned Assignor . . . irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the Claims and Assigned Claims, (and all proceeds and products thereof, including any related assigned assets and assigned documents) as such terms are defined or contained in that certain (1) Assignment and (2) Addendum to the Recovery Agreement and Assignment Addendum, both given and effective April 28, 2016 and executed on June 1, 2018, by and between Health First Health Plans, Inc., a Florida corporation and Medicare Advantage Organization and party to contract

number H1099 with The Centers for Medicare & Medicaid Services, as the "Client" and health plan assignor, and MSP Recovery, LLC, a Florida limited liability company (the "Assignment"); irrespective of when the claims were vested in Client, inclusive of any and all claim(s), causes of actions, proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party pursuant to the Assignment from the Client, including claims under consumer protection statutes and laws, any and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims and all information relating thereto.

74. On October 8, 2015, **Healthcare Alliance Group, Inc. ("HAI")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery 15-475, LLC. Specifically, the HAI Assignment states the following:

> [HAI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [HAI's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [HAI] that [HAI] has, may have had, or has asserted against any party including, but not limited to primary payors and/or third parties that may be liable to [HAI] arising from or relating to the Assigned Claims.

HAI Assignment at 1.1.

75. On June 12, 2017, MSP Recovery 15-475, LLC, irrevocably assigned all rights acquired under the HAI Assignment to Series 15-09-273, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement dated October 8, 2015, by and among [HAI] and [MSP Recovery 15-475, LLC] . .

76. On September 14, 2015, **Hygea Health Holdings, Inc. ("HYG")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made

on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

HYG Assignment states the following:

> [HYG] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [HYG's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [HYG] that [HYG] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [HYG] arising from or relating to the Assigned Claims.

HYG Assignment, at 1.1.

77.    On June 12, 2017, MSP Recovery, irrevocably assigned all rights acquired under the HYG

Assignment to Series 15-08-19, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claims Cost Recovery Agreement dated September 14, 2015, by and among [HYG] and [MSP Recovery, LLC] . . .

78.    On December 10, 2015, **Med Caribe C.S.P. ("MCCSP")** irrevocably assigned all its

rights and claims to recovery against any liable entity (including defendants for payments made

on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery 15-623, LLC.

Specifically, the MCCSP Assignment states the following:

> [MCCSP] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [MCCSP's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [MCCSP] that [MCCSP] has, may have had, or has asserted against any party including, but not limited to, primary payors and/or third parties that may be liable to [MCCSP] arising from or relating to the Assigned Claims.

MCCSP Assignment, at 1.1.

79.     On June 12, 2017, MSP Recovery 15-623, LLC irrevocably assigned all rights acquired under the MCCSP Assignment to Series 15-12-400 LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement dated December 10, 2015, by and among [MCCSP] and [MSP Recovery, LLC] ...

80.     On August 17, 2017, **Medical Consultants Management, LLC ("MCML")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the MCML Assignment states the following:

> [MCML] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [MCML's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [MCML] that [MCML] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [MCML] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

MCML Assignment, at 4.1.

81.     On September 8, 2017, MSP Recovery irrevocably assigned all rights acquired under the MCML Assignment to Series 17-08-647, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated August 17, 2017, by and among [MCML] and [MSP Recovery, LLC] . . .

82.     On February 18, 2016, **Medical IPA of the Palm Beaches, Inc. ("MIPAPB")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the MIPAPB Assignment states the following:

> [MIPAPB] hereby assigns, transfers, conveys, sets over and delivers to [MSP Recovery], or its assigns, to the extent it is legally permitted any and all of [MIPAPB's] right, title, ownership and interest in and to all rights and entitlements, that [MIPAPB] has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to [MIPAPB] arising from or relating to the Assigned Claims.

MIPAPB Assignment, at 1.1.

83.     On June 12, 2017, MSP Recovery, irrevocably assigned all rights acquired under the MIPAPB Assignment to Series 16-02-436, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Claim(s) Cost Recovery Agreement and Assignment of Claims and Causes of Action dated February 18, 2016, by and among [MIPAPB] and [MSP Recovery, LLC] . . .

84.     On February 4, 2016, **Medicos Aliados del Noreste, Inc. dba Grupo Medico Aliado del Noreste ("GMADN")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the GMADN Assignment states the following:

> [GMADN] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [GMADN's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [GMADN] that [GMADN] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [MIPAPB] arising from or relating to the Assigned Claims.

GMADN Assignment, at 4.1.

85.     On June 12, 2017, MSP Recovery, LLC irrevocably assigned all rights acquired under the

GMADN Assignment to Series 16-02-433, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated February 4, 2016, by
> and among [GMADN] and [MSP Recovery, LLC] . . .

86.     On December 10, 2015, **Millennium Medical Health Group, Inc. ("MMED")**

irrevocably assigned all its rights and claims to recovery against any liable entity (including

defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP

Recovery 15-621, LLC. Specifically, the MMED Assignment states the following:

> [MMED] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, in perpetuity, any and all of [MMED's] right, title, ownership and
> interest in and to all rights and entitlements, and all information and data used to pursue
> and/or recover monies for [MMED] that [MMED] has, may have had, or has asserted
> against any party including, but not limited to, primary payors and/or third parties that may
> be liable to [MMED] arising from or relating to the Assigned Claims.

MMED Assignment, at 1.1.

87.     On June 12, 2017, MSP Recovery 15-621, LLC irrevocably assigned all rights acquired

under the MMED Assignment to Series 15-12-398 LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement
> dated December 10, 2015, by and among [MMED] and [MSP Recovery 15-621,
> LLC] . . .

88.     On August 9, 2017, **Network Health, Inc. ("NHPN")** irrevocably assigned all its rights

and claims to recovery against any liable entity (including defendants for payments made on behalf

of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the NHPN

Assignment states the following:

> [NHPN] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, and any of its successors and assigns, any and all of [NHPN's]
> right, title, ownership and interest in and to all Claims existing on the date hereof,
> whether based in contract, tort, statutory right, and any and all rights (including, but
> not limited to, subrogation) to pursue and/or recover monies for [NHPN] that
> [NHPN] had, may have had, or has asserted against any party in connection with
> the Claims and all rights and claims against primary payers and/or third parties that
> may be liable to [NHPN] arising from or relating to the Claims, including claims
> under consumer protection statutes and laws, and all information relating thereto,
> all of which shall constitute the "Assigned Claims."

NHPN Assignment at 4.1.

89.     On August 10, 2017, MSP Recovery irrevocably assigned all rights acquired under the

NHPN Assignment to Series 15-09-355, LLC, a designated series of Plaintiff MSPRC. The Series

Assignment specifically states

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated August 9, 2017, by and
> among [NHPN] and [MSP Recovery, LLC] . . .

90.     On December 10, 2015, **Opcion MCA, Inc. ("OMIC")** irrevocably assigned all its rights

and claims to recovery against any liable entity (including defendants for payments made on behalf

of its Enrollees under Medicare Parts A, B, and D to MSP Recovery 15-624, LLC. Specifically,

the OMIC Assignment states the following:

> [OMIC] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, or its assigns, in perpetuity, any and all of [OMIC's] right, title, ownership and
> interest in and to all rights and entitlements, and all information and data used to pursue
> and/or recover monies for [OMIC] that [OMIC] has, may have had, or has asserted against
> any party including, but not limited to, primary payors and/or third parties that may be
> liable to [OMIC] arising from or relating to the Assigned Claims.

OMIC Assignment, at 1.1.

91.     On June 12, 2017, MSP Recovery 15-624, LLC irrevocably assigned all rights acquired

under the OMIC Assignment to Series 15-12-401 LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement
> dated December 10, 2015, by and among [OMIC] and [MSP Recovery 15-624,
> LLC] . . .

92.     On December 23, 2015, **Palm Beach Primary Care Associations, Inc. ("PBPCA")**

irrevocably assigned all its rights and claims to recovery against any liable entity (including

defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP

Recovery 16-1, LLC. Specifically, the PBPCA Assignment states the following:

> [PBPCA] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, or its assigns, in perpetuity, any and all of [PBPCA's] right, title,
> ownership and interest in and to all rights and entitlements, and all information and
> data used to pursue and/or recover monies for [PBPCA] that [PBPCA] has, may
> have had, or has asserted against any party (the "Assigned Claims"). This includes,
> but is not limited to, primary payors and/or third parties that may be liable to
> [PBPCA] arising from or relating to the Assigned Claims.

PBPCA Assignment, at 1.1.

93.     On June 12, 2017, MSP Recovery 16-1, LLC, irrevocably assigned all rights acquired

under the PBPCA Assignment to Series 16-01-409, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement
> dated December 23, 2015,, by and among [PBPCA] and [MSP Recovery 16-1,
> LLC] . . .

94.     On October 29, 2015, **Physicians Access Urgent Care Group, LLC ("PPP")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery 15-580, LLC. Specifically, the PPP Assignment states the following:

> [PPP] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [PPP's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [PPP] that [PPP] has, may had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [PPP] arising from or relating to the Assigned Claims.

PPP Assignment, at 1.1.

95.     On June 12, 2017, MSP Recovery 15-580, LLC, irrevocably assigned all rights acquired under the PPP Assignment to Series 15-10-362, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement dated October 29, 2015, by and among [PPP] and [MSP Recovery, 15-580, LLC] . . .

96.     On December 3, 2015, **Physician H.M.O. Inc. ("PHMO")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the PHMO Assignment states the following:

> [PHMO] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [PHMO's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [PHMO] that [PHMO] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [PHMO] arising from or relating to the Assigned Claims.

PHMO Assignment, at 4.1.

97.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the PHMO

Assignment to Series 15-12-396, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated December 3, 2015, by
> and among [PHMO] and [MSP Recovery, LLC] . . .

98.     On February 2, 2016, **Policlinica General de Coamo C.S.P. ("PGDC")** irrevocably

assigned all its rights and claims to recovery against any liable entity (including defendants for

payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery.

Specifically, the PGDC Assignment states the following:

> [PGDC] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its
> assigns, any and all of [PGDC's] right, title, ownership and interest in and to all rights and
> entitlements, and all information used to pursue and/or recover monies for [PHDC] that
> [PHDC] has, may have had, or has asserted against any party ("Assigned Claims"). This
> includes, but is not limited to, primary payors and/or third parties that may be liable to
> [PGDC] arising from or relating to the Assigned Claims.

PGDC Assignment, at 4.1.

99.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the PGDC

Assignment to Series 16-02-425, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated February 2, 2016, by
> and among [PGDC] and [MSP Recovery, LLC] . . .

100.    On May 6, 2016, **Policlinicas Medicas Asociadas, Inc. ("PMAS")** irrevocably assigned

all its rights and claims to recovery against any liable entity (including defendants for payments

made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the PMAS Assignment states the following:

> [PMAS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [PMAS's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [PMAS] that [PMAS] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [PMAS] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims".

PMAS Assignment, at 4.1.

101.   On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the PMAS Assignment to Series 16-05-457, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated May 6, 2016, by and among [PMAS] and [MSP Recovery, LLC] . . .

102.   On April 16, 2016, **Ponce Advance Medical Group, P.S.C., ("PAMG")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the PAMG Assignment states the following:

> [PAMG] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [PAMG's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [PAMG] that [PAMG] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [PAMG] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

PAMG Assignment, at 4.1.

103.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the PAMG

Assignment to Series 16-04-454, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated April 16, 2016, by and
> among [PAMG] and [MSP Recovery, LLC] . . .

104.    On February 18, 2016, **Preferred Primary Care, LLC ("PPC")** irrevocably assigned all

its rights and claims to recovery against any liable entity (including defendants for payments made

on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

PPC Assignment states the following:

> [PPC] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> [MSP Recovery], or its assigns, to the extent it is legally permitted any and all of
> [PPC's] right, title, ownership and interest in and to all rights and entitlements, that
> [PPC] has, may have had, or has asserted against any party including primary
> payors and/or third parties that may be liable to [PPC] arising from or relating to
> the Assigned Claims.

PPC Assignment, at 1.1.

105.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the PPC

Assignment to Series 16-02-435, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Claim(s) Cost Recovery Agreement and
> Assignment of Claims and Causes of Action dated February 18, 2016, by and
> among [PPC] and [MSP Recovery, LLC] . . .

106.    On July 19, 2017, **Premier Care Partners, LLC ("PCPS")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the PCPS Assignment states the following:

> [PCPS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [PCPS's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [PCPS] that [PCPS] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [PCPS] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

PCPS Assignment, at 4.1.

107.    On July 20, 2017, MSP Recovery irrevocably assigned all rights acquired under the PCPS Assignment to Series 17-07-642, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated July 19, 2017, by and among [PCPS] and [MSP Recovery, LLC] . . .

108.    On January 15, 2016, **Primary Physicians Medical Service, LLC ("PPMS")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the PPMS Assignment states the following:

> [PPMS] hereby assigns, transfers, conveys, sets over and delivers to MSP, or its assigns, any and all of [PPMS's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [PPMS] that [PPMS] has, may have had, or has asserted against any

party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [PPMS] arising from or relating to the Assigned Claims.

PPMS Assignment, at 8.

109.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the PPMS

Assignment to Series 16-01-413, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement dated January 15, 2016, by and among [PPMS] and [MSP Recovery, LLC] . . .

110.     On February 26, 2016, **Quality Care Physicians, LLC ("QCPL")** irrevocably assigned

all its rights and claims to recovery against any liable entity (including defendants for payments

made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically,

the QCPL Assignment states the following:

> [QCPL] hereby assigns, transfers, conveys, sets over and delivers to MSP, or its assigns, any and all of [QCPL's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [QCPL] that [QCPL] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [QCPL] arising from or relating to the Assigned Claims.

QCPL Assignment, at 4.1.

111.     On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the QCPL

Assignment to Series 16-03-440, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated February 26, 2016, by and among [QCPL] and [MSP Recovery, LLC] . . .

lxxii

112.   On February 22, 2016, **Quality Medical Care, Inc. ("QMG")** irrevocably assigned all its

rights and claims to recovery against any liable entity (including defendants for payments made

on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

QMG Assignment states the following:

> [QMG] hereby assigns, transfers, conveys, sets over and delivers to MSP, or its assigns,
> any and all of [QMG's] right, title, ownership and interest in and to all rights and
> entitlements, and all information used to pursue and/or recover monies for [QMG] that
> [QMG] has, may have had, or has asserted against any party (the "Assigned Claims"). This
> includes, but is not limited to, primary payors and/or third parties that may be liable to
> [QMG] arising from or relating to the Assigned Claims.

QMG Assignment, at 4.1.

113.   On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the QMG

Assignment to Series 16-02-439, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated February 22, 2016, by
> and among [QMG] and [MSP Recovery, LLC] . . .

114.   On February 18, 2016, **Risk Watchers, Inc. ("HPRW")** irrevocably assigned all its rights

and claims to recovery against any liable entity (including defendants for payments made on behalf

of its Enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the HPRW

Assignment states the following:

> [HPRW] hereby assigns, transfers, conveys, sets over and delivers to [MSP
> Recovery], or its assigns, to the extent it is legally permitted any and all of
> [HPRW's] right, title, ownership and interest in and to all rights and entitlements,
> that [HPRW] has, may have had, or has asserted against any party including
> primary payors and/or third parties that may be liable to [HPRW] arising from or
> relating to the Assigned Claims.

HPRW Assignment, at 1.1.

115.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the HPRW

Assignment to Series 15-09-31, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Claim(s) Cost Recovery Agreement and
> Assignment of Claims and Causes of Action dated February 18, 2016, by and
> among [HPRW] and [MSP Recovery, LLC] . . .

116.    On July 26, 2016, **SE Primary Care Services, CSP ("SPSI")** irrevocably assigned all its

rights and claims to recovery against any liable entity (including defendants) for payments made

on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the

SPSI Assignment states the following:

> [SPSI] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP
> Recovery, and any of its successors and assigns, any and all of [SPSI's] right, title,
> ownership and interest in and to all Claims existing on the date hereof, whether based in
> contract, tort, statutory right, and any and all rights (including, but not limited to,
> subrogation) to pursue and/or recover monies for [SPSI] that [SPSI] had, may have had, or
> has asserted against any party in connection with the Claims and all rights and claims
> against primary payers and/or third parties that may be liable to [SPSI] arising from or
> relating to the Claims, including claims under consumer protection statutes and laws, and
> all information relating thereto, all of which shall constitute the "Assigned Claims".

SPSI Assignment, at 4.1

117.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the SPSI

Assignment to Series 16-07-481, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's rights, title,
> ownership and interest in and to the [claims] (and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated July 26, 2016, by and
> among [SPSI] and [MSP Recovery, LLC] . . .

118.    On January 18, 2016, **Southern Health Care Group, Inc. ("SHGI")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the SHGI Assignment states the following:

> [SHGI] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [SHGI's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [SHGI] that [SHGI] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [SHGI] arising from or relating to the Assigned Claims.

SHGI Assignment, at 4.1.

119.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the SHGI Assignment to Series 16-01-420 LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's rights, title, ownership and interest in and to the [claims] (and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated January 18, 2016, by and among [SHGI] and [MSP Recovery, LLC] . . .

120.    On May 12, 2017, **Summacare, Inc. ("Summacare")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the Summacare Assignment states the following:

> [Summacare] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [Summacare's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for [Summacare] that [Summacare] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [Summacare] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all

information relating thereto, all of which shall constitute the "Assigned Claims".

Summacare Assignment at 4.1.

121.    On June 12, 2017, MSP Recovery irrevocably assigned all rights acquired under the

Summacare Assignment to Series 16-11-509, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [claims](and all proceeds and products thereof)
> as such terms are defined in the Recovery Agreement dated May 12, 2017, by and
> among [Summacare] . . . and [MSP Recovery] . . .

122.    Summacare consented to, acknowledged, approved, and ratified the assignment from MSP

Recovery to Series 16-11-509, which is memorialized in a letter dated September 5, 2018.

123.    On September 21, 2015, **Suncoast Medical Network 2, Inc. ("SUNCM")** irrevocably

assigned all its rights and claims to recovery against any liable entity (including defendants) for

payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery 220,

LLC. Specifically, the, SUNCM Assignment states the following:

> [SUNCM] hereby irrevocably assigns, transfers, conveys, sets over and delivers to
> MSP Recovery, or its assigns, in perpetuity, any and all of [SUNCM's] right, title,
> ownership and interest in and to all rights and entitlements, and all information and
> data used to pursue and/or recover monies for Client that [SUNCM] has, may have
> had, or has asserted against any party (the "Assigned Claims"). This includes, but
> is not limited to, primary payors and/or third parties that may be liable to [SUNCM]
> arising from or relating to the Assigned Claims.

SUNCM Assignment, at 1.1.

124.    On June 12, 2017, MSP Recovery 220, LLC irrevocably assigned all rights acquired under

the SUNCM Assignment to Series 15-08-10, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to
> Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the [claims](and all proceeds and products thereof)
> as such terms are defined in the Healthcare Claim(s) Cost Recovery Agreement

dated September 21, 2015, by and among [SUNCM] and [MSP Recovery 220, LLC] . . .

125.    On November 9, 2015, **Suncoast Provider Network, Inc. ("SCPN")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery, 15-608, LLC. Specifically, the SCPN Assignment states the following:

> [SCPN] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [SCPN's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [SCPN] that [SCPN] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [SCPN] arising from or relating to the Assigned Claims.

SCPN Assignment, at 1.1.

126.    On June 12, 2017, MSP Recovery 15-608, LLC, irrevocably assigned all rights acquired under the SCPN Assignment to Series 15-11-387, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [claims](and all proceeds and products thereof) as such terms are defined in the Healthcare Claim(s) Cost Recovery Agreement dated November 9, 2015, by and among [SCPN]. . . and [MSP Recovery 15-608, LLC] . . .

127.    On November 3, 2015, **Transatlantic Healthcare, Inc. ("THC")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery, 15-131, LLC. Specifically, the THC Assignment states the following:

> [THC] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [THC's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [THC] that [THC] has, may have

> had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [THC] arising from or relating to the Assigned Claims.

THC Assignment, at 1.1.

128.    On June 12, 2017, MSP Recovery 15-131, LLC, irrevocably assigned all rights acquired under the THC Assignment to Series 15-11-385, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [claims](and all proceeds and products thereof) as such terms are defined in the Healthcare Claim(s) Cost Recovery Agreement dated November 3, 2015, by and among [THC]. . . and [MSP Recovery 15-131, LLC] . . .

129.    On November 3, 2015, **Trinity Physicians, LLC ("TPS")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery, 15-592, LLC. Specifically, the TPS Assignment states the following:

> [TPS] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, in perpetuity, any and all of [TPS's] right, title, ownership and interest in and to all rights and entitlements, and all information and data used to pursue and/or recover monies for [TPS] that [TPS] has, may have had, or has asserted against any party (the "Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [TPS] arising from or relating to the Assigned Claims.

TPS Assignment, at 1.1.

130.    On June 12, 2017, MSP Recovery 15-592, LLC, irrevocably assigned all rights acquired under the TPS Assignment to Series 15-11-371, LLC, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [claims](and all proceeds and products thereof) as such terms are defined in the Health Care Claim(s) Cost Recovery Agreement

dated November 3, 2015, by and among [TPS]. . . and [MSP Recovery 15-592, LLC] . . .

131. On November 23, 2015, **University Health Care MSO, Inc. ("UNHC")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the UNHC Assignment states the following:

> [UNHC] hereby assigns, transfers, conveys, sets over and delivers to MSP Recovery, or its assigns, any and all of [UNHC's] right, title, ownership and interest in and to all rights and entitlements, and all information used to pursue and/or recover monies for [UNHC] that [UNHC] has, may have had, or has asserted against any party ("Assigned Claims"). This includes, but is not limited to, primary payors and/or third parties that may be liable to [UNHC] arising from or relating to the Assigned Claims.

UNHC Assignment, at 4.1.

132. On June 12, 2017, MSP Recovery, irrevocably assigned all rights acquired under the UNHC Assignment to Series 15-08-25, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [claims](and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated November 23, 2015, by and among [UNHC]. . . and [MSP Recovery, LLC] . . .

133. On April 7, 2016, **Verimed IPA, LLC ("VMIL")** irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to MSP Recovery. Specifically, the VMIL Assignment, states the following:

> [VMIL] hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [VMIL's] right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but

> not limited to, subrogation) to pursue and/or recover monies for [VMIL] that [VMIL] had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to [VMIL] arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims". The transfer, grant, right, or assignment of any and all of [VMIL's] right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute. This assignment shall survive the termination or expiration of this Agreement, notwithstanding anything herein to the contrary.

VMIL Assignment, at 4.1.

134.    On June 12, 2017, MSP Recovery, irrevocably assigned all rights acquired under the VMIL Assignment to Series 15-09-108, a designated series of Plaintiff MSPRC:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the [claims](and all proceeds and products thereof) as such terms are defined in the Recovery Agreement dated April 7, 2016, by and among [VMIL]. . . and [MSP Recovery, LLC] . . .

135.    On June 5, 2020, BankUnited, N.A. as administrative agent, and Soneet Kapila, as Liquidating Agent of Universal Health Care Group, Inc., solely in their capacity as assignees of **Universal HMO of Texas, Inc.,** a Texas health maintenance organization in Receivership, by and through Prime Tempus, Inc., Special Deputy Receiver on behalf of itself and its affiliates, subsidiaries, or related entities (UOTI) irrevocably assigned all its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its enrollees under Medicare Parts A, B, and D to SERIES 19-06-1054, a designated series of Plaintiff MSPRC. Specifically, the UOTI Assignment, states the following:

> [Assignor] irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and any of its designated series, successors and assigns, any and all of Assignor's right, title, ownership and interest in and to the (i) all Claims existing on the date hereof, whether based in contract, tort, or statutory right, and all related

recovery rights arising from and related to the claims data transferred to Assignee (or its affiliates or service providers, including MSP Recovery), and arising during the period beginning April 2003 and continuing up to, including and through December 2014 and (ii) any and all causes of action, claims, and demands of any nature whatsoever relating to payments for health care services provided to Assignor's members and enrollees, and legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims described in clause (i) that Assignor had, may have had, or has asserted, or may assert in the future, against any party in connection with the Claims; and (iii) all causes of action, claims, rights and demands of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to Assignor arising from or relating to the Claims described in clause (i), including claims under consumer protection statutes and laws, "as is", without any representations or warranties of any kind, either express or implied (all of the items set forth in clauses (i)-(iii), the "Assigned Claims"). The assignment of the Assigned Claims set forth herein is irrevocable and absolute.

136.    On June 25, 2019, **St. Jude Medical Group Corp d/b/a Vidamax Medical Center ("VMCS")** irrevocably assigned all its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the VMCS Assignment states the following:

> [VMCS] irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of [VMCS's] right, title, ownership and interest in and to (i) all Claims existing on the date hereof, whether based in contract, tort,  or statutory right, and all related recovery rights arising from and related to all claims data transferred to MSP Recovery, and (ii) any and all claims, demands and causes of action of any nature whatsoever relating to payments for healthcare services provided to [VMCS's] members and enrollees and related legal or equitable rights (including, but not limited to, subrogation) to pursue and/or recover monies related to the Claims that [VMCS] had, may have had, or has asserted against any party in connection with the Claims and (iii) all claims, rights, demands and causes of action of any nature whatsoever, legal or equitable, against primary payers, Responsible Parties and/or third parties that may be liable to [VMCS] arising from or relating to the Claims, including claims under consumer protection statutes and laws (all of the Claims and rights set forth in (i)-(iii), the "Assigned Claims").

VMCS Assignment at 1.1.1.

137.    On August 7, 2019, MSP Recovery, LLC irrevocably assigned all rights acquired under

the VMCS Assignment to Series 19-06-1058, a designated series of Plaintiff MSPRC:

> The Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers
> to Assignee and its successors and assigns, any and all of Assignor's right, title,
> ownership and interest in and to the "Claims" and "Assigned Claims", and all
> proceeds and products thereof (collectively, the "Assigned Claims") as such terms
> are defined in the Recovery Agreement.

**b. Plaintiff MSPA Standing**

1.  MSPA has been irrevocably assigned any and all rights to recover payments made on

    behalf of its Assignors' health plan members and enrollees. These assignments authorize

    MSPA to pursue and enforce all legal rights of recovery and reimbursement for health care

    services and Medicare benefits. For example, and only to serve to further demonstrate

    standing, MSPA alleges a few of the assignments below as examples.

2.  On December 16, 2014, **Interamerican Medical Center Group, LLC** ("IMC")

    irrevocably assigned all of its rights and claims to recover against any liable entity

    (including defendants) for payments made on behalf of their enrollees under Medicare

    Parts A, B, and D to MSP Recovery, LLC. Specifically, the IMC Assignment, states the

    following:

> By way of this Agreement, [IMC] appoints, directs, or otherwise, irrevocably
> assigns all of [IMC's] rights as it pertains to the rights pursuant to any plan, State
> or Federal statute(s) whatsoever directly and/or indirectly for any of its members
> and/or plan participants, and/or its rights . . .

3.  On February 20, 2015, MSP Recovery, LLC, irrevocably assigned all rights acquired under

    the IMC Agreement to MSPA:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to
> Assignee or its assigns any and all of Assignor's right, title, ownership and interest
> in and to all rights and entitlements, that Assignor has, may have had, or has
> asserted against third parties from or relating to the Claims.

4. IMC consented to, acknowledged, approved, and ratified the assignment from MSP Recovery, LLC, to MSPA.

5. On December 3rd, 2014, **MCCI Group Holdings, LLC** ("MCCI") irrevocably assigned all of its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the IMC Assignment, states the following:

   By way of this Agreement, [MCCI] appoints, directs, and otherwise, irrevocably assigns all of [MCCI's] rights as it pertains to the rights pursuant to any plan, State or Federal statute(s) whatsoever directly and/or indirectly for any of its members and/or plan participants, and/or its rights . . .

6. On February 20, 2015, **MCCI Group Holdings, LLC** ("MCCI") irrevocably assigned all of its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC, and MSPA Claims 1, LLC. Specifically, the MCCI Assignment, states the following:

   Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns, any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising from or relating to the Claims.

7. On June 25, 2015, **Professional Health Choice** ("PHC") irrevocably assigned all of its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSPA Claims XI, LLC. Specifically, the PHC Assignments states:

   Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has

asserted against any party including primary payors and/third parties that may be liable to Client arising from or relating to the Claims related to services and/or supplies.

8.      On January 21, 2016, MSPA Claims XI, LLC then irrevocably assigned certain rights acquired under the PHC Agreement to Plaintiff MSPA:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising from or relating to only the Claims set forth in Services Entities Schedule 2, related to Actos and certain class action cases.

9.      Further on March 15, 2017, MSPA Claims XI, LLC then irrevocably assigned all rights acquired under the PHC Agreement to Plaintiff MSPA:

> Assignor hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Assignor arising from or relating to the Claims… Assignor desires to assign and transfer to Assignee, and Assignee desires to acquire from Assignor, the claims, rights, and causes of action, set forth in the Agreement, as more specifically stated in Article 1.1, Irrevocable and Absolute Assignment of Claims, that were not included in the Limited Assigned Claims and previously assigned by MSPA Claims XI, LLC.

10.      On April 15, 2014, Florida Healthcare Plus, Inc. ("FHCP") irrevocably assigned all rights to recover conditional payments made on behalf of its Enrollees to La Ley Recovery Systems, Inc. ("La Ley Recovery"). The assignment from FHCP to La Ley Recovery ("FHCP Assignment") expressly provides:

> By way of this agreement, [FHCP] appoints, directs and otherwise assigns all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

FHCP Assignment at § 1.1.

11.     The FHCP Assignment authorized La Ley Recovery to subsequently assign the acquired rights, so long as the assignment was approved by FHCP. On February 20, 2015, La Ley Recovery assigned the rights it acquired pursuant to the FHCP Assignment to MSPA ("La Ley Recovery Assignment"). The La Ley Recovery Assignment provides as follows:

> [La Ley Recovery] hereby irrevocably assigns, transfers, conveys, sets over, and delivers to [MSPAC] or its assigns any and all of [La Ley Recovery]'s right, title, ownership and interest in and to all rights and entitlements, that [La Ley Recovery] has, may have had, or has asserted against third parties arising from or relating to the Claims.

La Ley Recovery Assignment at § 1.

12.     The La Ley Recovery Assignment was approved by FHCP's receiver through a Settlement Agreement between La Ley Recovery, La Ley Recovery Systems – FHCP, Inc., MSP Recovery LLC, MSP Recovery Services, LLC, and MSPA ("Settlement Agreement"). In the Settlement Agreement, FHCP's receiver acknowledged and agreed to the terms and conditions of the FHCP Assignment. Settlement Agreement at § 2(a).

13.     On June 14, 2016, the Leon County Circuit Court approved the terms of the Settlement Agreement, specifically finding "that the Settlement Agreement was negotiated in good faith and is in the best interest of the estate of Florida Healthcare Plus, Inc.[,]" and retained jurisdiction to enforce the terms of the Settlement Agreement. Order Approving Settlement Agreement Between Receiver and La Ley Recovery Systems, Inc. at 1.

14.     Accordingly, as of the date of this filing, MSPA possesses all of FHCP's rights to pursue and recover all conditional payments FHCP made on behalf of its Enrollees from and against any liable primary payer, including Defendants, and the requisite standing to file the instant litigation.

15.     On April 28, 2015, **Choice One Medical Group, LLC** ("CHO") irrevocably assigned all of its rights and claims to recover against any liable entity (including defendants) for payments made on behalf of their enrollees under Medicare Parts A, B, and D to MSPA Claims II, LLC. Specifically, the CHO Assignment, states the following:

> Client hereby irrevocably, assigns, transfers, conveys, sets over and delivers to MSPA Claims, or its assigns, any and all of Client's right, title, ownership and interest in and to all rights and entitlements, that that Client has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Client arising from or relating to the Claims related to services and/or supplies.

16.     On January 21, 2016, MSPA Claims II, LLC then irrevocably assigned certain rights acquired under the CHO Agreement to Plaintiff MSPA:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over, and delivers to Assignee or its assigns any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against third parties arising from or relating to only the Claims set forth in Services Entities Schedule 2, related to Actos and certain class action cases.

17.     Further on March 15, 2017, MSPA Claims II, LLC then irrevocably assigned all rights acquired under the CHO Agreement to Plaintiff MSPA:

> Assignor hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all rights and entitlements, that Assignor has, may have had, or has asserted against any party including primary payors and/or third parties that may be liable to Assignor arising from or relating to the Claims… Assignor desires to assign and transfer to Assignee, and Assignee desires to acquire from Assignor, the claims, rights, and causes of action, set forth in the Agreement, as more specifically stated in Article 1.1, Irrevocable and Absolute Assignment of Claims, that were not included in the Limited Assigned Claims and previously assigned by MSPA Claims II, LLC.

### c. Plaintiff MAO-MSO Standing

1.     MAO-MSO has been irrevocably assigned any and all rights to recover payments made on behalf of its Assignors' health plan members and enrollees. These assignments authorize

MAO-MSO to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits. For example, and only to serve to further demonstrate standing, MAO-MSO alleges a few of the assignments below as examples.

2.     On May 3, 2016, **Preferred Medical Plan, Inc.** ("PMPI") irrevocably assigned all of its rights and claims to recovery against any liable entity (including defendants) for payments made on behalf of its Enrollees under Medicare Parts A, B, and D to MSP Recovery, LLC. Specifically, the PMPI Assignments states:

> Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recovery monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assignees Claims", as also specified in Section 1.1.

PMPI Assignment, at 3.1.

3.     On August 8, 2016, MSP Recovery, LLC irrevocably assigned all rights acquired under the PMPI Agreement to Plaintiff MAO-MSO:

> Assignor hereby irrevocably assigns, sells, transfers, conveys, sets over and delivers to Assignee and its successors and assigns, all of Assignor's right, title, ownership and interest in and to all Assigned Claims, plus all proceeds, products and distributions of any kind, and proceeds of proceeds, in respect thereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Claims, and all rights and claims against primary payers and/or third parties that may be liable to Assignor arising from or relating to the Assigned Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims."

Assignment to MAO-MSO 1.1. Consideration was given between each party in executing these

assignment agreements.